708 A.2d 770

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
DAVID ALEXANDER, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued March 16, 1998—Decided April 29, 1998.

Before Judges PETRELLA, SKILLMAN and EICHEN.[1]

*Linda Mehling,* Assistant Deputy Public Defender, argued the cause for appellant (*Ivelisse Torres,* Public Defender, attorney; *Ms. Mehling,* of counsel and on the brief).

*Linda K. Danielson,* Deputy Attorney General, argued the cause for respondent (*Peter Verniero,* Attorney General, attorney; *Ms. Danielson,* of counsel and on the brief).

The opinion of the court was delivered by

SKILLMAN, J.A.D.

This appeal involves a claim that defendant was denied due process of law because the negligence of the police in investigating the crime resulted in pre-indictment delay which impaired his ability to defend the charges.

Defendant was indicted for attempted murder, in violation of *N.J.S.A.* 2C:5–1 and *N.J.S.A.* 2C:11–3, armed robbery, in violation of *N.J.S.A.* 2C:15–1, armed burglary, in violation of *N.J.S.A.* 2C:18–2, second degree aggravated assault, in violation of *N.J.S.A.* 2C:12–1b(1), terroristic threats, in violation of *N.J.S.A.* 2C:12–3, fourth degree aggravated assault, in violation of *N.J.S.A.* 2C:12–1b(4), possession of a weapon, a handgun, for an unlawful purpose, in violation of *N.J.S.A.* 2C:39–4a, and possession of a handgun without a permit, in violation of *N.J.S.A.* 2C:39–5b. Defendant moved to dismiss the indictment on the ground that he had been denied due process of law because of the State's delay in investigating the crime and presenting the matter to the Grand Jury. The trial court denied the motion. Defendant subsequently pled guilty pursuant to a plea agreement to the armed robbery charge and the two counts of aggravated assault. The court sentenced defendant in accordance with the plea agreement to a twenty year

---

[1] Although Judge Eichen did not hear oral argument, counsel have consented to her participation in the decision.

term of imprisonment, with ten years of parole ineligibility, for armed robbery, and a concurrent ten year term, with three and one-third years of parole ineligibility, for the second degree aggravated assault. This sentence was made consecutive to a sentence defendant was already serving on another indictment. The court merged defendant's conviction for the fourth degree aggravated assault into his conviction for armed robbery. The court dismissed the remaining charges in accordance with the plea agreement.

On appeal, defendant makes the following arguments:

I.  SINCE DEFENDANT DEMONSTRATED THAT HE WAS DENIED DUE PROCESS OF LAW BY THE STATE'S FAILURE TO INDICT HIM FOR TWO AND ONE-HALF YEARS, THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT'S MOTION TO DISMISS THE INDICTMENT.

A.  The Prejudice to Defendant.

B.  Length and Reasons for Delay.

II.  THE IMPOSITION OF A TEN-YEAR PAROLE DISQUALIFIER ON COUNT ONE AND THE REQUIREMENT THAT THE SENTENCES ON THIS INDICTMENT RUN CONSECUTIVELY TO DEFENDANT'S PRIOR SENTENCE IS MANIFESTLY EXCESSIVE.

We reject defendant's arguments and affirm his conviction and sentence.[2]

The crime occurred at a private residence in Jersey City on December 26, 1992. The two perpetrators, one of whom was wearing a mask, forced their way into the house, asked the owner where her safe was located, then ran upstairs and searched the bedrooms. While in the owner's bedroom, the masked perpetrator pulled her telephone from the wall. Continuing their search for the safe, they took the owner into her basement, where they encountered several other people playing cards. When one of them jumped up, the masked perpetrator shot him, inflicting non-

_____

[2] In view of the prosecutor's apparent acquiescence in defense counsel's assertion at sentencing that defendant intended to appeal from the order denying his motion to dismiss the indictment, we reject the State's argument that defendant waived his right to appeal from this order by entering an unconditional guilty plea. *Cf. State v. Matos*, 273 *N.J.Super.* 6, 15, 640 *A.*2d 1176 (App.Div. 1994).

fatal wounds to his hand and head. The perpetrators then seized a strongbox containing $2,900 in cash and fled the house.

The police officers investigating the crime obtained a partial latent fingerprint from the telephone which the masked perpetrator had ripped out of the wall. However, the police simply placed the fingerprint in a file rather than sending it for analysis. Two years later, when the victim of the robbery inquired as to the status of the investigation of the crime, the police informed her that it was at a "dead end" because no one had identified the perpetrators. She then asked about the latent fingerprint. At this point the police found the fingerprint in the file and sent it for analysis, which resulted in a determination that the fingerprint on the telephone matched defendant's fingerprint. Four months later, defendant was indicted primarily based on this fingerprint identification.

In support of his motion to dismiss, defendant submitted his own affidavit which alleged that at the time of the crime, he was in the company of his brother Alvin Alexander, who subsequently died. Defendant also submitted a second affidavit which alleged that he had been in the victim's home on prior occasions and had used the telephone on which his fingerprint was found to call his cousin's beeper. In addition, defendant submitted a memorandum from the Bell Atlantic Company, which stated that his request for the victim's telephone records for 1992 could not be honored because such records are only retained for eighteen months. Based on this evidence, defendant argued that he had been severely prejudiced by the State's delay in completing its investigation and submitting the case to the Grand Jury.

The trial court concluded that defendant had not been unduly prejudiced by the State's delay in completing its investigation. Therefore, it denied his motion to dismiss the indictment.

Because the delay upon which defendant based his motion to dismiss occurred before rather than after the return of the indictment and the right to a speedy trial protected by the Sixth Amendment to the United States Constitution is not triggered

until arrest or indictment, *United States v. Lovasco,* 431 *U.S.* 783, 788–89, 97 *S.Ct.* 2044, 2048, 52 *L. Ed.*2d 752, 758 (1977); *United States v. Marion,* 404 *U.S.* 307, 313–23, 92 *S.Ct.* 455, 463–64, 30 *L. Ed.*2d 468, 474–80 (1971), defendant's motion was based solely on the due process guarantees of the federal and state constitutions. As we have previously noted:

> The due process inquiry focuses on whether the delay "violates those 'fundamental conceptions of justice which lie at the base of our sense of fair play and decency.'" *United States v. Lovasco,* [*supra,*] 431 *U.S.* at 790, 97 *S.Ct.* at 2049, 52 *L. Ed.*2d at 759 (citations omitted). Unlike analysis under the Sixth Amendment's Speedy Trial Clause, which involves a four-factor balancing test and under which prejudice to the defense is presumed from an unusually long delay between indictment and trial, [citations omitted], claims under the Due Process Clause arising from undue preindictment or pre-arrest delay are measured by a far more rigorous standard. In order to prevail, a defendant must demonstrate "both that (1) there was no legitimate reason for the delay and (2) [defendant] was prejudiced thereby." *State v. Rodriguez,* 112 *N.J.Super.* 513, 515, 271 *A.*2d 905 (App.Div.1970).
>
> [*State v. Aguirre,* 287 *N.J.Super.* 128, 132, 670 *A.*2d 583 (App.Div.), *certif. denied,* 144 *N.J.* 585, 677 *A.*2d 758 (1996).]

The Supreme Court of the United States has stated in dictum that to establish a due process violation based on a delay in obtaining an indictment, "the defendant [must] prove that the Government's delay in bringing the indictment was a deliberate device to gain an advantage over him." *United States v. Gouveia,* 467 *U.S.* 180, 192, 104 *S.Ct.* 2292, 2299, 81 *L. Ed.*2d 146, 157 (1984); *see also United States v. $8,850,* 461 *U.S.* 555, 563, 103 *S.Ct.* 2005, 2011, 76 *L. Ed.*2d 143, 151 (1983) (stating, also in dictum, that *Lovasco* holds that a due process challenge based on a delay in instituting criminal proceedings "... can prevail only upon a showing that the Government delayed seeking an indictment in a deliberate attempt to gain an unfair tactical advantage over the defendant or in reckless disregard of its probable prejudicial impact upon the defendant's ability to defend against the charges.") Moreover, a majority of federal circuit courts of appeal have held that "for pre-indictment delay to violate the due process clause it must not only cause the accused substantial, actual prejudice, but *the delay must also have been intentionally undertaken by the government for the purpose of gaining some tactical*

*advantage over the accused in the contemplated prosecution or for some other impermissible, bad faith purpose.*" *United States v. Crouch,* 84 *F.*3d 1497, 1514 (5th Cir.1996)(en banc) (emphasis added), *cert. denied,* —— *U.S.* ——, 117 *S.Ct.* 736, 136 *L. Ed.*2d 676 (1997); *accord United States v. Mills,* 964 *F.*2d 1186, 1192 (D.C.Cir.1992) (en banc), *cert. denied,* 506 *U.S.* 977, 113 *S.Ct.* 471, 121 *L. Ed.*2d 378 (1992); *United States v. Crooks,* 766 *F.*2d 7, 11 (1st Cir.), *cert. denied,* 474 *U.S.* 996, 106 *S.Ct.* 421, 88 *L. Ed.*2d 362 (1985); *United States v. Hoo,* 825 *F.*2d 667, 671 (2d Cir.1987), *cert. denied,* 484 *U.S.* 1035, 108 *S.Ct.* 742, 98 *L. Ed.*2d 777 (1988); *United States v. Ismaili,* 828 *F.*2d 153, 157 (3d Cir.1987), *cert. denied,* 485 *U.S.* 935, 108 *S.Ct.* 1110, 99 *L. Ed.*2d 271 (1988); *United States v. Rogers,* 118 *F.*3d 466, 474–77 (6th Cir.1997); *United States v. Sowa,* 34 *F.*3d 447, 450 (7th Cir.1994), *cert. denied,* 513 *U.S.* 1117, 115 *S.Ct.* 915, 130 *L. Ed.*2d 796 (1995); *United States v. Engstrom,* 965 *F.*2d 836, 839 (10th Cir.1992); *United States v. Hayes,* 40 *F.*3d 362, 365 (11th Cir.1994), *cert. denied,* 516 *U.S.* 812, 116 *S.Ct.* 62, 133 *L. Ed.*2d 24 (1995).

If pre-indictment delay can be found to violate the due process guarantees of the federal and state constitutions only if it is a product of intentional governmental action to gain some tactical advantage over the accused or for some other impermissible, bad faith purpose, the delay in this case would not provide a basis for the dismissal of defendant's indictment because defendant concedes that the delay was solely the result of the negligent failure of the police to check the fingerprint found on the telephone in the victim's bedroom. However, some federal circuit courts of appeal hold that pre-indictment delay may constitute a due process violation without a showing of improper prosecutorial motive. *See, e.g., Howell v. Barker,* 904 *F.*2d 889, 895 (4th Cir.)[3], *cert. denied,* 498 *U.S.* 1016, 111 *S.Ct.* 590, 112 *L. Ed.*2d 595 (1990);

---

[3] We note that a panel of the Fourth Circuit recently expressed disagreement with *Howell* but nevertheless followed that decision because "only the *en banc* court may overrule a prior panel decision." *Jones v. Angelone,* 94 *F.*3d 900, 905 (4th Cir.1996).

*United States v. Miller*, 20 *F*.3d 926 (8th Cir.), *cert. denied*, 513 *U.S.* 886, 115 *S.Ct.* 226, 130 *L. Ed.*2d 152 (1994); *Bennett v. Lockhart*, 39 *F*.3d 848 (8th Cir.1994), *cert. denied*, 514 *U.S.* 1018, 115 *S.Ct.* 1363, 131 *L. Ed.*2d 219 (1995); *United States v. Ross*, 123 *F*.3d 1181, 1184–87 (9th Cir.1997), *cert. denied* —— *U.S.* ——, 118 *S.Ct.* 733, 139 *L. Ed.*2d 670 (1998). Because the Supreme Court of the United States has never resolved the conflict among the circuit courts of appeal[4] and the Supreme Court of New Jersey has never addressed the issue, we assume for the purpose of this opinion, without deciding the issue, that a due process violation may be established by undue pre-indictment delay even though the cause of the delay is solely the negligence of the police or the prosecutor and proceed to the issue of prejudice.

▇▇▇ "The law is well-settled that actual prejudice, not possible or presumed prejudice, is required to support a due process claim." *State v. Aguirre, supra*, 287 *N.J.Super.* at 133, 670 *A.*2d 583. "[T]he defendant must show 'the delay caused "actual and substantial prejudice'" endangering his right to a fair trial and 'must present concrete evidence showing material harm.'" *Id.* at 134, 670 *A.*2d 583 (quoting *United States v. Anagnostou*, 974 *F.*2d 939, 941–42 (7th Cir.1992), *cert. denied*, 507 *U.S.* 1050, 113 *S.Ct.* 1943, 123 *L. Ed.*2d 649 (1993)). "Vague assertions of lost witnesses, faded memories, or misplaced documents are insufficient to establish a due process violation from pre-indictment delay." *United States v. Beszborn*, 21 *F.*3d 62, 67 (5th Cir.), *cert. denied*, 513 *U.S.* 934, 115 *S.Ct.* 330, 130 *L. Ed.*2d 288 (1994). "A mere loss of potential witnesses is insufficient absent a showing that their testimony 'would have actually aided the defense." *Crouch, supra*, 84 *F.*3d at 1515 (quoting *Beszborn, supra*, 21 *F.*3d at 66). In

---

4 In *Hoo v. United States, supra*, Justice White dissented from the denial of the petition for a writ of certiorari on the ground that "[t]he continuing conflict among the Circuits on this important question of constitutional law requires resolution by this Court." 484 *U.S.* at 1036, 108 *S.Ct.* at 742, 98 *L. Ed.*2d at 778. Justice White and Justice Kennedy dissented without opinion from the denial of the petition for a writ of certiorari in *Barker v. Howell*, 498 *U.S.* 1016, 111 *S.Ct.* 590, 112 *L. Ed.*2d 595.

fact, one federal circuit court has noted that "[t]he task of establishing the requisite prejudice for a possible due process violation is 'so heavy' that we have found only two cases since 1975 in which any circuit has upheld a due process claim [based on pre-indictment delay]." *United States v. Huntley*, 976 *F.*2d 1287, 1290 (9th Cir.1992) (citing *United States v. Barket*, 530 *F.*2d 189 (8th Cir.1976) and *Howell v. Barker, supra*, 904 *F.*2d 889). Thus, in *United States v. McGough*, 510 *F.*2d 598, 604–05 (5th Cir.1975), the court held that "the death of some six potential defense witnesses" failed to "meet the clear requirement of [*United States v. Marion, supra*, 404 *U.S.* 307, 92 *S.Ct.* 455, 30 *L. Ed.*2d 468] that actual prejudice be shown" because defendant's assertions concerning the testimony these witnesses could have given was "speculative." Similarly, in *Beszborn, supra*, 21 *F.*3d at 66, the court concluded that the death of "five potentially material witnesses" as well as the loss of alleged exculpatory documents was insufficient to establish actual prejudice. *See also United States v. Lovasco, supra*, 431 *U.S.* at 789–90, 97 *S.Ct.* at 2048, 52 *L. Ed.*2d at 759; *United States v. West*, 58 *F.*3d 133, 136 (5th Cir.1995).

█ Applying the stringent standard of actual prejudice articulated in these cases, we conclude that the trial court correctly denied defendant's motion to dismiss. Initially, we note that the record indicates defendant's brother was killed in August of 1993.[5] Consequently, it is highly improbable that defendant would have been tried before his brother's death even if he had been indicted shortly after the crime in December of 1992. Moreover, defendant's claim of prejudice resulting from the delay in completing the investigation is based solely on his allegations that he was with his brother at the time of the crime and that he made a call from

---

[5] Defendant stated at the hearing on his motion to dismiss that his brother died on August 3rd, and he asserted in his affidavit in support of the motion that he remembered the day of the crime, December 26, 1992, "well because it was the last time I spent the Christmas Holidays with my brother before his death." Because there is nothing in this record to suggest that defendant was separated from his brother during the 1993 Christmas Holidays for some reason other than his death, we assume that defendant's brother died on August 3, 1993.

the telephone on which his fingerprints were found prior to the date of the crime. There is no direct evidence that defendant's brother would have recalled being with defendant at the time of the crime and would have been prepared to give such testimony at his trial. There is also no direct evidence that the telephone records would have reflected the call which defendant allegedly made from the victim's bedroom prior to the crime.[6] Thus, defendant's unsubstantiated and speculative allegations that he was prejudiced by the State's delay in completing its investigation of the crime do not show the actual prejudice required to establish a denial of due process.

Finally, defendant's argument that his sentence was manifestly excessive is clearly without merit and does not require discussion. *R.* 2:11-3(e)(2).

Affirmed.

---

[6] In our review of this appeal, we have disregarded the trial judge's statements regarding her own personal knowledge of telephone company records.