**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3138-22

LINDA D. SMITH,

    Plaintiff-Appellant,

v.

JOHN H. DORIA, ELLEN S.
MORABITO, MICHAEL C.
BENEDETTI, and CARLO A.
BENEDETTI,

    Defendants,

and

THE ESTATE OF JOHN R.
COLACCI,

    Defendant-Respondent.

_____

LOUISE M. FERGUSON,

    Plaintiff-Appellant,

v.

THE ESTATE OF JOHN R.
COLACCI,

Defendant/Third Party
Plaintiff-Respondent,

v.

LINDA D. SMITH,

Plaintiff/Third-Party
Defendant.

_____

Argued April 23, 2024 – Decided May 9, 2024

Before Judges Enright, Paganelli and Whipple.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket Nos. L-1421-19 and L-2490-19.

Evan Garber argued the cause for appellants (Garber Law, PC, attorneys; Joel Wayne Garber and Evan Samuel Garber, on the briefs).

Christopher Marcucci argued the cause for respondent (Margolis Edelstein, attorneys; Christopher Marcucci, on the brief).

PER CURIAM

Plaintiffs Linda D. Smith and Louise M. Ferguson appeal from the May 16, 2023 order denying their motion for a new trial. We affirm.

A-3138-22

I.

This case arises from an August 7, 2017 motor vehicle collision between Smith and defendant John R. Colacci. When the accident occurred, John's[1] wife, Antoinette, was a passenger in his car and Ferguson was a passenger in Smith's car.

In the spring of 2019, Smith and Ferguson separately sued John for injuries they allegedly sustained in the collision.[2] In July 2019, John filed a third-party complaint against Smith in the Ferguson matter. The following month, the trial court consolidated plaintiffs' cases.

In August 2022, after John died, the trial court granted plaintiffs leave to amend their complaints to name John's estate as a defendant. Antoinette served as Administratrix of the estate.

During discovery, the parties deposed both drivers and their passengers regarding the accident. The deponents agreed that on the morning of August 7,

---

[1] Because John and his wife have the same surnames, we refer to them by their first names. We intend no disrespect in doing so.

[2] Smith also named defendants John H. Doria, Ellen S. Morabito, Michael C. Benedetti, and Carlo A. Benedetti in her complaint, asserting claims for injuries she reportedly sustained during a motor vehicle accident in May 2017. The parties later stipulated to a dismissal of these defendants from the action.

A-3138-22

2017, Smith was driving on Union Avenue in the right-hand lane and John was driving his car behind her. Further, the deponents agreed that shortly before the accident, Smith's vehicle navigation system directed her to turn left into a parking lot, and as she began the turn, she crossed the double yellow line and collided with John's passenger side door car while he was trying to pass her vehicle.

The parties disagreed on who was responsible for the accident. According to John's deposition testimony, before the collision, Smith's car was "just stopped" in the roadway with "no lights, no red lights, [and] no directionals" on, to indicate her car "was incapacitated." He also testified that after he "stopped for about three or four minutes" behind Smith's car, he "began to pass on the left, very slow and carefully, and that's when [he] got hit" by her car.

Following the exchange of discovery, the matter proceeded to trial, with the parties disputing: (1) whether Smith stopped her vehicle before she began the left turn into the parking lot; (2) whether she turned on her left directional signal before she attempted to turn; (3) the speed at which John was traveling when the collision occurred; and (4) whether other vehicles passed Smith's vehicle before John tried to do so.

4

Jury selection began on March 29, 2023. The trial court summoned between fifty and fifty-five prospective jurors to the courtroom to start the selection process. Although Smith and Ferguson are Black, and Antoinette is White, neither of the parties' attorneys objected to or commented on the racial composition of the venire either before the first juror was questioned or during voir dire. Additionally, during voir dire, counsel for the parties exercised multiple peremptory challenges.

Before jury selection ended, the judge inquired if counsel wished to exercise any additional peremptory challenges. In response, plaintiff's counsel stated, "Your Honor, plaintiff[s are] satisfied with this jury." Jury selection concluded shortly thereafter.

Once the remaining venire was excused from the courtroom, plaintiffs' attorney "lodged an objection with [the trial judge] back in his chambers" as to "the composition of the jury pool." Plaintiffs' counsel stated only two unselected members of the venire were Black. According to plaintiffs, the judge stated he "fully understood [p]laintiffs' concerns, but that it was beyond his purview to order a new jury pool on those grounds." The judge ultimately directed counsel to proceed to trial.

A-3138-22

Six days later, the jury returned a no cause verdict against plaintiffs. On April 6, 2023, judgment was entered in favor of John's estate. The judgment reflected the jury's finding that John "was not negligent and bore no liability for the August 7, 2017 motor vehicle accident."

Plaintiffs moved for a new trial, alleging they "were denied their constitutional right to a jury pool that represent[ed] a cross-section of their community." During argument on the motion on May 12, 2023, plaintiffs' counsel also contended jury selection was based on "an unconstitutional jury pool," which "had an effect on the case." He also argued plaintiffs were "entitled to a new trial where [they could] assemble a [new] jury pool" that "[wa]s . . . representative . . . of their community."

Following argument, the judge who presided over the parties' trial orally denied the motion. He acknowledged "[t]here [we]re certain things that . . . happen during [a] trial where the trial judge is . . . uniquely capable of addressing" a particular problem. However, regarding plaintiffs' broader concerns about Camden County's jury selection process, the judge stated, "if this is a problem, . . . it's a structural problem. It implicates the entire New Jersey judiciary. And trial judges should not be . . . making structural decisions." He added, "I think it[ is] highly inappropriate for a trial court judge to assume that

he or she should be ordering [a] whole[-]scale revision and ordering some other new way to get jurors in[to a jury pool]."

Further, the judge found no reason to question the source lists Camden County used to secure potential jurors, stating, "I do[ not] know why [the lists] would[ not] be fairly representative. There may be other lists out there that are more representative. But I do[ not] know as a trial judge [if] that[ is] true." Therefore, he denied plaintiffs' motion "on the basis of the way that Camden County gets jurors. And also, . . . the secondary basis that the actual panel that was brought up was not representative of the . . . race of . . . plaintiffs." The judge entered a conforming order on May 16, 2023.

II.

On appeal, plaintiffs argue: (1) they "have a constitutional right to a trial by an impartial jury drawn from a representative cross-section of their community, even in a civil case"; (2) they "were deprived of this constitutional right to a representative jury"; (3) they "belong to a constitutionally-cognizable group"; (4) "Camden County has underrepresented black residents as jurors over a significant period of time[] and to an empirically measurable degree"; (5) "the strength of the showing of racial disparity, as well as the use of racially non-

neutral selection procedures, proves discriminatory purpose"; and (6) "this discrimination resulted in [plaintiffs receiving] an unfair trial."

These arguments are unavailing. We add the following comments.

"A jury verdict is entitled to considerable deference and 'should not be overthrown except upon the basis of a carefully reasoned and factually supported (and articulated) determination, after canvassing the record and weighing the evidence, that the continued viability of the judgment would constitute a manifest denial of justice.'" Hayes v. Delamotte, 231 N.J. 373, 385-86 (2018) (quoting Risko v. Thompson Muller Auto. Grp., Inc., 206 N.J. 506, 521 (2011)). Under Rule 2:10-1, we will not consider an argument that a jury verdict is against the weight of the evidence unless the appellant previously moved for a new trial on that ground. Ogborne v. Mercer Cemetery Corp., 197 N.J. 448, 462 (2009); State v. Reininger, 430 N.J. Super. 517, 538 (App. Div. 2013).

A trial court's ruling on a motion for a new trial, "shall not be reversed unless it clearly appears that there was a miscarriage of justice under the law." R. 2:10-1; see also Twp. of Manalapan v. Gentile, 242 N.J. 295, 304 (2020). Where an issue raised on a new trial motion involves a decision that is addressed to the trial court's discretion, we will not reverse unless a judge's "mistaken

exercise prejudiced the substantial rights of a party." Pressler & Verniero, Current N.J. Court Rules, cmt. 4 on R. 2:10-2 (2024).

In evaluating a trial court's decision to deny a new trial, "an appellate court must give due deference to the trial court's feel of the case," but "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Hayes, 231 N.J. at 386 (alteration in original) (first quoting Risko, 206 N.J. at 521; then quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

"Jury-selection processes are presumed valid and a defendant challenging a jury-selection process 'must show by a preponderance of the believable evidence that the attacked process is fatally flawed.'" State v. Dangcil, 248 N.J. 114, 141 (2021) (quoting State v. Long, 204 N.J. Super. 469, 485 (Law Div. 1985)).[3] Per Rule 1:8-3(b), "[a]ny party may challenge the array in writing on the ground that the jurors were not selected, drawn, or summoned according to

---

[3] In Dangcil, the Court held defendant's filed challenge to the array of jurors was untimely under Rule 1:8-3(b), considering he waited until after thirteen prospective jurors were interviewed in a two-hour period to challenge the array. 248 N.J. at 134. Moreover, the Court held defendant failed to establish "a prima facie claim of actual prejudice warranting relaxation of Rule 1:8-3(b)'s time bar." Ibid.

law. A challenge to the array shall be decided before any individual juror is examined." (Emphasis added).

Importantly, our Supreme Court has made clear that "relaxation of Rule 1:8-3(b)'s time bar is to 'be granted only where there is a prima facie showing of actual prejudice to [a] defendant's right to a fair and impartial jury.'" Dangcil, 248 N.J. at 133 (quoting State v. Simon, 161 N.J. 416, 481 (1999)). The Court explained that "time limitations are strictly enforced because to do otherwise would impede the orderly administration of [the] criminal justice system." Id. at 133-34 (alteration in original) (quoting Simon, 161 N.J. at 481).

Further, the Dangcil Court instructed:

> To challenge whether a jury pool was drawn from a representative cross-section of the community, a defendant is required to
>
> > (1) identify a constitutionally-cognizable group, that is, a group capable of being singled out for discriminatory treatment; (2) prove substantial underrepresentation over a significant period of time; and (3) show discriminatory purpose either by the strength of [defendant's] statistical showing or by showing the use of racially non-neutral selection procedures to support the inference of discrimination raised by substantial underrepresentation.
>
> [Id. at 141 (quoting State v. Dixon, 125 N.J. 223, 232 (1991)).]

Understanding similar challenges could be raised in future criminal matters, the Court also held that "[i]f a defendant establishes all three prongs, the burden then shifts to the State, which must show 'that a significant state interest is manifestly and primarily advanced by those aspects of the jury selection process that result in disproportionate exclusion of the distinctive group.'" Ibid. (quoting State v. Ramseur, 106 N.J. 123, 216-17 (1987)).

"[A]ctual prejudice, not possible or presumed prejudice, is required to support a due process claim." State v. Aguirre, 287 N.J. Super. 128, 133 (App. Div. 1996). While recognizing "[t]he demonstration of 'actual prejudice' is a heavy lift," we have held that a defendant pursuing a due process claim in a criminal case "must show the [State's actions] caused actual and substantial prejudice endangering [the defendant's] right to a fair trial[,] and must present concrete evidence showing material harm." State v. S.J.C., 471 N.J. Super. 608, 624 (App. Div. 2022), leave to appeal denied, 251 N.J. 372 (2022) (quoting State v. Alexander, 310 N.J. Super. 348, 355 (App. Div. 1998)).

Guided by these standards, and the plain language of Rule 1:8-3(b), we are convinced plaintiffs' challenge to the composition of the venire was untimely and improperly made. Indeed, plaintiffs' counsel orally objected to the racial composition of the venire in the trial judge's chambers, rather than in writing

11

and on the record.  He also failed to lodge his objection until after:  extensive voir dire concluded; he expressed satisfaction with the selected jurors; and the remaining venire was dismissed from the courtroom.  Under these circumstances, we are persuaded the judge correctly denied plaintiffs' motion for a new trial.

We hasten to add that because plaintiffs' challenge to the venire was untimely and mistakenly exercised, the record is devoid of evidence proving their attorney's claim that the jury pool included only two Black persons.  Thus, it is not surprising defendant now claims that after plaintiffs' counsel interposed his objection, "neither the [trial c]ourt[,] nor opposing counsel . . . could make any observations to confirm or deny counsel's representation" regarding the skin color of potential jurors.  The limited record before us also fails to show actual prejudice resulted from the composition of the venire.[4]

Moreover, given the timing and nature of plaintiffs' challenge, there is no evidence that Black persons were underrepresented in the entire pool of venirepersons available in the Camden County courthouse on the day of jury

---

[4]  Plaintiffs submitted no transcript of the trial, other than the transcript for the jury selection hearing on March 29, 2023.  The only other transcript they provided was from argument on their motion for a new trial on May 12, 2023.

selection. We also do not ignore that due to plaintiffs' belated challenge, the trial judge was deprived of the chance to timely rectify, if appropriate, any legitimate concerns involving the venirepersons present in the courthouse on the day of trial.

In sum, on this limited record, we discern no basis to disturb the denial of plaintiffs' request for a new trial and no reason to question the jury's verdict. Accordingly, we affirm the May 16, 2023 order, albeit for reasons different than those expressed by the trial judge. See State v. Heisler, 422 N.J. Super. 399, 416 (App. Div. 2011) (noting a reviewing court is free to affirm "on grounds different from those relied upon by the trial court"). Considering our determination, we do not reach plaintiffs' remaining arguments.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3138-22