NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3118-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

MALIHKI X. OLIVER,

    Defendant-Appellant.

_____

APPROVED FOR PUBLICATION

August 12, 2025

APPELLATE DIVISION

Submitted May 29, 2025 – Decided August 12, 2025

Before Judges Mayer, Rose and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Indictment No. 22-10-0137.

John W. Hartmann, attorney for appellant.

Matthew J. Platkin, Attorney General, attorney for respondent (Regina M. Oberholzer, Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

ROSE, J.A.D.

This appeal requires us to determine, as a matter of first impression, the elements of second-degree purchasing firearm parts to manufacture a firearm without a serial number, N.J.S.A. 2C:39-9(k) (Paragraph k), and the application of the territorial jurisdiction statute, N.J.S.A. 2C:1-3. In October 2022, a State grand jury issued a four-count indictment, charging defendant Malihki X. Oliver with conspiracy and weapons offenses for his part in purchasing multiple "ghost gun"[1] kits in Pennsylvania and transporting the kits to New Jersey with the purpose to assemble firearms. Defendant was arrested after New Jersey State Police (NJSP) stopped his car near his Trenton address. Police also arrested Raheem Tucker, a Pennsylvania resident, who was driving defendant's car when it was stopped.

After he was indicted, defendant unsuccessfully moved to dismiss the first two counts of the indictment: second-degree conspiracy to purchase firearm parts not imprinted with a serial number and transport large capacity ammunition magazines, N.J.S.A. 2C:5-2, and :39-9(k) and (h) (count one); and second-degree purchasing firearm parts not imprinted with a serial number with

_____

[1] See United States v. Bishoff, 58 F.4th 18, 20 n.2 (1st Cir. 2023) (defining "ghost guns" as "firearms sold as sets of parts that can be assembled at home, and that typically lack markings such as serial numbers").

the purpose to manufacture a firearm without a license to do so, N.J.S.A. 2C:39-9(k) and :2-6 (count two).[2] In a written statement of reasons annexed to the February 21, 2023 order denying relief, the motion judge rejected defendant's contentions that the Deputy Attorney General's (DAG) grand jury instructions on the elements of Paragraph k were erroneous, the State failed to satisfy the elements of Paragraph k, and the DAG improperly "expressed her opinion" during the presentation and therefore failed to satisfy "the State's fair play obligation."

Defendant thereafter pled guilty to count two before the same judge who denied his motion. Pursuant to the terms of the negotiated plea agreement, defendant was sentenced as a third-degree offender to a three-year prison term, and the remaining counts of the present indictment and all counts of another indictment were dismissed.[3]

---

[2] The remaining counts charged: fourth-degree unlawful possession of a large capacity ammunition magazine, N.J.S.A. 2C:39-3(j) (count three); and fourth-degree transporting two large capacity ammunition magazines, N.J.S.A. 2C:39-9(h) and :2-6 (count four).

[3] We glean from the plea hearing transcript, during the factual basis for his guilty plea, defendant exculpated Tucker and the charges in the present indictment were to be dismissed against Tucker after defendant's sentencing. Another judge sentenced defendant. The sentencing transcript does not reflect the charges against Tucker were dismissed but he is not a party to this appeal.

On appeal, defendant reprises the following arguments for our consideration:

POINT I

THE [TRIAL] COURT ERRED IN FINDING THE STATE PRESENTED PRIMA FACIE EVIDENCE AS TO EACH ELEMENT OF COUNTS I AND II OF THE INDICTMENT AND IN FINDING THAT TERRITORIAL JURISDICTION EXISTED.

 A. The [Trial] Court Erred in Concluding that Since the State Read the Statute to the Grand Jury that the Elements of the Offense are Irrelevant Because the State Was Not Blatantly Wrong and Should Have Concluded that there is One Element.

 B. The [Trial] Court Erred in Finding that The Elements of [Paragraph k] Were Supported by Prima Facie Evidence.

 C. The [Trial] Court erred in its Application of the Territorial Jurisdiction Statute.

POINT II

THE [TRIAL] COURT ERRED IN NOT DISMISSING THE INDICTMENT BECAUSE THE STATE VIOLATED ITS OBLIGATION TO PRESENT THE CASE IN A FAIR MANNER WHEN THE DAG MISINFORMED THE GRAND JURY ABOUT THE ELEMENTS, ADVISED THEM THAT THE PARTIES MERE PRESENCE IN THE STATE SATISFIED AN ELEMENT AND LIMITED THE JURORS' QUESTIONS.

4

Unpersuaded by these contentions, we affirm.

I.

We summarize the facts from the testimony adduced at the grand jury hearing, "viewing the evidence and the rational inferences drawn from that evidence in the light most favorable to the State."[4] State v. Morrison, 188 N.J. 2, 13 (2006). The evidence was presented through the State's sole witness, Detective Gregory Woods of the Trenton Police Department, who was "on loan" to the NJSP Crime Suppression Unit and the Realtime Crime Center Intel Unit at the time of the incident.

Before calling Woods to testify, the DAG instructed:

> [L]et me stress that anything I say is not evidence and should not be considered by you as evidence. The evidence regarding the alleged facts in this matter will be presented to you through the testimony of witnesses. There will be no exhibits in this presentation. Therefore, you should not consider anything that I tell you as evidence. In the end, any decision of whether or not to indict, who to indict, if anyone, and on what crimes, if any, is yours. The brief factual background that I'm going to read to you is merely to acquaint you with the facts of the case so you have a context for this testimony. Again, this is not evidence. All of the evidence is going to come from the witness in this case.

---

[4] In doing so, we reject the State's counterstatement of facts to the extent it cites the factual basis supporting defendant's guilty plea where those facts were not adduced at the grand jury hearing.

I would like also to remind you that you're here to consider the evidence and the law presented here and only here.

The DAG then provided a brief factual background regarding the incident. She also read the proposed indictment and applicable statutes.

Woods testified on July 30, 2022, the New York State Police (NYSP) and Pennsylvania Attorney General's Office jointly worked an interdiction detail at a gun show in Trevose, Pennsylvania. NYSP Investigator Christian Spears, stationed at the show's exit door, was assigned "to look for out-of-state targets" who purchased ghost gun kits and "advise the appropriate state authorities so that the purchasers could be investigated further." Woods explained ghost gun kits were legally sold in Pennsylvania.

Woods further testified Spears witnessed defendant and Tucker purchase multiple kits from a vendor, which did "not require identification or paperwork" and sold the kits "on a cash basis." Spears did not observe whether defendant or Tucker paid for the kits but Spears saw both men "participating in the sale and hear[d] both negotiating the price." Spears followed the men to the parking lot where they placed the kits in the trunk of a silver Mercedes. Noting the car's New Jersey license plate registration, Spears notified the NJSP before returning to his post at the show's exit.

A-3118-23

Woods stated about "thirty or forty minutes later," Spears saw defendant and Tucker return to the show and purchase additional ghost gun kits from the same dealer. Similar to the initial purchase, Spears observed defendant and Tucker negotiating with the vendor but could not determine who paid.

After this second purchase, Spears saw defendant and Tucker "exit the gun show and leave in the silver Mercedes." Again, Spears notified the NJSP and advised "the Mercedes was on the move."

According to Woods, the NJSP determined the Mercedes was registered to defendant at a Trenton address and surveilled the area. After defendant and Tucker entered and exited a nearby delicatessen, Trenton police officers stopped the car for tinted windows. Defendant gave police "a valid registration for the vehicle." Tucker provided his license indicating he was a resident of Pennsylvania.

After they were removed from the car, defendant and Tucker appeared nervous and denied they attended the gun show. Defendant consented to a search of the vehicle and police recovered five ghost gun kits without serial numbers, two Glock 9mm slides, and two extended magazines each capable of holding thirty-four 9mm rounds. Neither defendant nor Tucker possessed a valid firearms license.

7

Woods explained the NJSP Ballistics Unit tested the kits and confirmed they were "Polymer 80 brand pistol frame kits with internal frame parts that have not been altered or completed to a functional state" and lacked serial numbers. The laboratory also examined the magazines and determined each "h[eld] thirty-four 9mm Luger caliber cartridges." Woods testified one magazine "fits and functions" in a Taurus pistol; the other, a Glock pistol.

After Woods concluded his testimony and exited the grand jury room, the DAG fielded several questions from the jurors "on the law." After this first round of questioning, the DAG reiterated:

> I would like to remind you that you're the sole determiners of the facts and you alone assess the credibility of the witness and the evidence. Anything that I have said in that regard is not evidence. I cannot stress that enough. I know there has [sic] been some questions. I can instruct you on the law. Anything I said regarding factually, the testimony of the witness must control. You can discuss the facts during your deliberations. Anything I said other than the law is not binding on you.

A grand juror then asked the DAG to reread the statute on the second proposed charge. Another juror inquired: "The firearms were purchased in Pennsylvania. Is possession of that kit a crime in New Jersey?" The DAG responded: "The way I read the statutes is that there are two elements. There is the purchase and then the intent to readily manufacture. The intent was in New

A-3118-23

Jersey because they brought the kits into New Jersey for the purpose of manufacturing them." The DAG then cited the applicable section of this state's territorial jurisdiction statute, N.J.S.A. 2C:1-3(a)(1).

Woods was recalled and answered the jurors' questions regarding certain facts of the case. The DAG interjected when a juror asked, "What happened if they were just passing through?" The DAG explained, "That's not the fact pattern here. You're to determine the case based on the facts and the evidence that we presented to you with the law. In this case, there is no evidence that they were just passing through."

## II.

As a threshold matter, we address the State's argument defendant waived his right to appeal from the denial of his motion to dismiss the indictment when he entered his guilty plea. Citing Rule 3:9-3(f) and our decision in State v. Davila, 443 N.J. Super. 577, 586 (App. Div. 2016), the State argues the condition was not "placed on the record" and expressly approved by the State and motion judge. The State notes defendant did not indicate "Yes" or "No" in response to Question 4(e), "Do you further understand that by pleading guilty you are waiving your right to appeal the denial of all other pretrial motions except the following" but asserts "no motions were listed as preserved for

9

appeal." Although the State acknowledges we have held challenges to territorial jurisdiction may be raised at any time, see e.g., State v. Sylvia, 424 N.J. Super. 151, 156 (App. Div. 2012); State v. Streater, 233 N.J. Super. 537, 541 (App. Div. 1989), the State argues those cases were not resolved by guilty plea.

During defendant's plea hearing, the following exchange occurred:

[THE COURT]: Do you understand by pleading guilty you are not waiving your right to appeal the denial of a motion to suppress evidence or the denial of the acceptance of pretrial intervention? Do you understand?

[DEFENDANT]: I understand.

THE COURT: The motion that is pending, is there a withdrawal of that motion?

[DEFENSE COUNSEL]: I'm withdrawing that motion. There was (indiscernible), Your Honor.

THE COURT: I'm sorry?

[DEFENSE COUNSEL]: That motion is being withdrawn. The motion to suppress is being withdrawn today.

And there was also a motion obviously to release. We're withdrawing that motion.

But there was a motion that was heard on the legality of the actual statute. That motion is still – you know, that can be appealed.

THE COURT: That can be appealed.

[DEFENSE COUNSEL]:  Yes.

THE COURT:  Because that was part of a suppression.

[DEFENSE COUNSEL]:  Correct.

THE COURT:  Yes.  All right.

[(Emphasis added).]

Addressing defendant, the motion judge inquired, "Do you understand by pleading guilty you are waiving your right to appeal the denial of any and all pretrial motions you or your attorney filed?"  Before defendant could answer, the judge addressed defense counsel and stated, "You didn't file any pretrial motions really."  Defense counsel responded, "Correct, yeah."  The question posed to defendant remained unanswered.  Crucially, the prosecutor did not respond to the representations made about defendant's preservation of his right to appeal from the denial of his motion to dismiss the indictment.

New Jersey courts have long recognized "a guilty plea generally constitutes a waiver of all issues which were or could have been addressed by the trial judge before its entry."  State v. Gonzalez, 254 N.J. Super. 300, 303 (App. Div. 1992).  Those issues include the defendant's "contention that the State violated his [or her] constitutional rights prior to the plea."  State v. Crawley, 149 N.J. 310, 316 (1997).

11

By contrast, a motion to suppress evidence is automatically preserved. R. consistent with Rule 3:9-3(f), preserving the right to appeal specified motions. A conditional guilty plea requires "the approval of the court and the consent of the prosecuting attorney," must be "on the record" and regard an "adverse determination of any specified pretrial motion." R. 3:9-3(f). However, the form of the consent required to validate a conditional plea "need not be express or explicit." Pressler & Verniero, Current N.J. Court Rules, cmt. 7 on R. 3:9-3(f) (2025). "If the defendant prevails on appeal, the defendant shall be afforded the opportunity to withdraw his or her plea." R. 3:9-3(f); see Davila, 443 N.J. Super. at 586.

In Davila, we held "defense counsel's casual mention of 'all of the motions' [wa]s insufficient" to "satisfy the requirement of judicial approval or constitute 'on the record' acknowledgment of a particular motion." 443 N.J. Super. at 586. In State v. Alexander, 310 N.J. Super. 348, 351 n.2 (App. Div. 1998), however, "we reject[ed] the State's argument that [the] defendant waived his right to appeal from" an "order denying his motion to dismiss the indictment . . . by entering an unconditional guilty plea" given "the prosecutor's apparent acquiescence in defense counsel's assertion at sentencing that defendant intended to appeal from th[at] order." Further, our Supreme Court has declined

12

to enforce Rule 3:9-3(f) "in limited situations where it would result in an injustice to strictly adhere to [its] requirements." State v. J.M., 182 N.J. 402, 410 (2005).

In the present matter, defense counsel stated in open court defendant could still appeal the "legality of the actual statute." Although the judge seemingly confused defendant's motion to dismiss the indictment with defendant's withdrawn suppression motion – and pretrial motions in general – the DAG neither objected to defense counsel's representation nor corrected the record. Further, defendant did not expressly answer the question concerning waiver in the plea form or during colloquy with the court. Because the court acknowledged the issue was preserved and the prosecutor apparently acquiesced, we see no reason to preclude defendant from raising the issue on appeal. See Alexander, 310 N.J. Super. at 351 n.2. And as the State recognizes, challenges to territorial jurisdiction can be raised at any time.

## III.

We turn to the merits of the contentions raised in defendant's first point. An appellate court reviews a trial court's decision on a motion to dismiss an indictment for abuse of discretion. See State v. Twiggs, 233 N.J. 513, 532 (2018); State v. Hogan, 144 N.J. 216, 229 (1996). However, when the decision

"was based on the court's interpretation of the statutes pursuant to which [the] defendant was charged" our review is de novo. State v. Bernardi, 456 N.J. Super. 176, 186 (App. Div. 2018); see also State v. S.B., 230 N.J. 62, 67 (2017) (holding appellate courts "review a trial court's decision to dismiss an indictment de novo [when] it [does] not involve 'a challenge to fact-finding on the part of the trial court'" (quoting State v. Cagno, 211 N.J. 488, 505 (2012))). We therefore conduct a de novo review of issues concerning statutory construction, including the meaning of a statute's terms. See Bernardi, 456 N.J. Super. at 186; Twiggs, 233 N.J. at 532.

"An indictment is presumed valid and should only be dismissed if it is 'manifestly deficient or palpably defective.'" State v. Keogh, 481 N.J. Super. 67, 76 (App. Div. 2025) (quoting Twiggs, 233 N.J. at 532). "At the grand jury stage, the State is not required to present enough evidence to sustain a conviction." State v. Feliciano, 224 N.J. 351, 380 (2016); see also State v. Shaw, 241 N.J. 223, 238 (2020). "As long as the State presents 'some evidence establishing each element of the crime to make out a prima facie case,' a trial court should not dismiss an indictment." Feliciano, 224 N.J. at 380 (quoting State v. Saavedra, 222 N.J. 39, 57 (2015)). "Conversely, '[t]he absence of any evidence to support the charges would render the indictment "palpably

14

defective" and subject to dismissal.'" Keogh, 481 N.J. Super. at 76-77 (alteration in original) (quoting Morrison, 188 N.J. at 12); see also Shaw, 241 N.J. at 239.

"[I]n determining the sufficiency of an indictment under the New Jersey Constitution, '[t]he fundamental inquiry is whether the indictment substantially misleads or misinforms the accused as to the crime charged. The key is intelligibility.'" State v. Dorn, 233 N.J. 81, 94 (2018) (second alteration in original) (quoting State v. Wein, 80 N.J. 491, 497 (1979)). Sufficient specificality is necessary "to preclude the substitution by a trial jury of an offense which the grand jury did not in fact consider or charge." State v. LeFurge, 101 N.J. 404, 415 (1986) (quoting State v. Boratto, 80 N.J. 506, 519 (1979)).

Our interpretation of a statute is guided by well-established principles. "The overriding goal of all statutory interpretation 'is to determine as best we can the intent of the Legislature, and to give effect to that intent.'" S.B., 230 N.J. at 67 (quoting State v. Robinson, 217 N.J. 594, 604 (2014)). The plain text of a statute "is the 'best indicator' of legislative intent." State v. Rodriguez, 238 N.J. 105, 113 (2019) (quoting DiProspero v. Penn, 183 N.J. 477, 492 (2005)). "The '[c]ourt may neither rewrite a plainly-written enactment of the Legislature nor presume that the Legislature intended something other than that expressed

15

A-3118-23

by way of the plain language.'" State v. Cooper, 256 N.J. 593, 605 (2024) (quoting W.S. v. Hildreth, 252 N.J. 506, 519 (2023)).

Accordingly, "[w]hen the Legislature's chosen words lead to one clear and unambiguous result, the interpretive process comes to a close, without the need to consider extrinsic aids." State v. Shelley, 205 N.J. 320, 323 (2011). "When the plain language is ambiguous, however, [courts] consider extrinsic interpretative aids, including legislative history." S.B., 230 N.J. at 68. "If an ambiguity in a criminal statute is not resolved by reviewing the text and extrinsic sources, the rule of lenity dictates that the ambiguities must be interpreted in favor of the defendant." State v. Young, 448 N.J. Super. 206, 218-19 (App. Div. 2017), aff'd o.b., 233 N.J. 345 (2018). We do so mindful that "penal statutes are to be strictly construed." State v. D.A., 191 N.J. 158, 164 (2007).

As the motion judge in this matter correctly recognized, the "first principle of any criminal prosecution is that a State must have territorial jurisdiction to enforce the authority of its laws." State v. Denofa, 187 N.J. 24, 36 (2006); see also State v. Sumulikoski, 221 N.J. 93, 101 (2015) (recognizing, as a general proposition, New Jersey only may exercise jurisdiction over offenses that occur within its borders); N.J.S.A. 2C:1-3(a)(1) (providing "a person may be convicted under the law of this State of an offense committed by his [or her] own conduct

. . . if . . . [e]ither the conduct which is an element of the offense or the result which is such an element occurs within this State").

The Code of Criminal Justice defines "[c]onduct," as "an action or omission and its accompanying state of mind, or, where relevant, a series of acts and omissions." N.J.S.A. 2C:1-14(d). Further, an "[e]lement of the offense" is defined as "(1) such conduct or (2) such attendant circumstances or (3) such a result of conduct as," among other factors "[i]s included in the description of the forbidden conduct in the definition of the offense," or "[e]stablishes the required kind of culpability." N.J.S.A. 2C:1-14(h)(3)(a) and (b). Our Supreme Court has held "if a defendant's conduct or the result of his conduct are elements of the crime charged and if either the conduct or result occurred in New Jersey, the crime is prosecutable in this State, unless one of the exceptions to territorial jurisdiction delineated in N.J.S.A. 2C:1-3 applies." State v. Ferguson, 238 N.J. 78, 94 (2019).

New Jersey courts broadly interpret the territorial jurisdiction statute "to apply 'to offenses committed partly outside of the State.'" Sumulikoski, 221 N.J. at 102 (quoting Streater, 233 N.J. Super. at 543). To establish jurisdiction, there must be a "direct nexus" between the criminal offense and this state. Ibid. A court tasked with a territorial jurisdiction challenge must therefore "consider

whether there was some evidence presented to the grand jury establishing that New Jersey has territorial jurisdiction over the crime charged in the indictment." State v. Aloi, 458 N.J. Super. 234, 239 (App. Div. 2019).

Enacted on November 8, 2018, Paragraph k is a relatively new section of N.J.S.A. 2C:39-9. The parties have not cited, and our independent research has not revealed, any authority interpreting Paragraph k. Nor did the Legislature expressly reveal its intent in enacting Paragraph k, other than a conviction thereunder does not "merge with any other criminal conviction and a court is to impose separate sentences for a violation of the bill's provisions and any other criminal offense." Sponsors' Statement to S. 2465 (Apr. 12, 2018). Further, the Supreme Court Committee on Model Criminal Jury Charges has not issued model charges for any subsection of N.J.S.A. 2C:39-9.[5]

We are guided, instead, by Paragraph k's plain terms:

> k. Purchasing firearm parts to manufacture a firearm without a serial number. In addition to any other criminal penalties provided under law, a person who, with the purpose to manufacture or otherwise assemble a firearm and without being registered or licensed do so as provided in chapter 58 of Title 2C of the New Jersey Statutes, purchases or otherwise obtains separately or as part of a kit a firearm frame or firearm

---

[5] We are forwarding a copy of our opinion to the Supreme Court's Committee on Model Criminal Jury Charges for its consideration of creating a model charge on N.J.S.A. 2C:39-9(k).

receiver which is not imprinted with a serial number registered with a federally licensed manufacturer or any combination of parts from which a firearm without a serial number may be readily manufactured or otherwise assembled, but which does not have the capacity to function as a firearm unless manufactured or otherwise assembled is guilty of a crime of the second degree. Notwithstanding the provisions of N.J.S.2C:1-8 or any other law, a conviction under this subsection shall not merge with a conviction for any other criminal offense and the court shall impose separate sentences upon a violation of this subsection and any other criminal offense.

As used in this subsection, "firearm frame or firearm receiver" means the part of a firearm that provides housing for the firearm's internal components, such as the hammer, bolt or breechblock, action, and firing mechanism, and includes without limitation any object or part which is not a firearm frame or receiver in finished form but is designed or intended to be used for that purpose and which may readily be made into a firearm frame or receiver through milling or other means.

[(Emphasis added).]

Against these principles, we consider defendant's overlapping challenges to counts one and two of the indictment. Defendant argues the motion judge erroneously agreed with the State's grand jury instruction that Paragraph k is comprised of two elements when "the [L]egislature intended one element," "purchasing with the intent to assemble." Noting the ghost gun kits were purchased in Pennsylvania, where it is legal to do so, defendant argues

19

Paragraph k only "prohibit[s] purchasing firearm parts in New Jersey for the purposes of manufacturing the firearm without a serial number."  Because the State cannot demonstrate the purchase occurred in New Jersey, defendant asserts the State failed to present prima facie evidence of the elements of the offenses charged in counts one and two of the indictment, and the judge misapplied the territorial jurisdiction statute.

The plain terms of Paragraph k and the territorial jurisdiction statute refute defendant's contentions.  In our view, Paragraph k requires the State prove defendant:  (1) purchased a ghost gun kit; (2) acted with purpose to manufacture or assemble a firearm; and (3) was not registered or licensed to manufacture or assemble a firearm in this state.  The conduct stated in the first element, the ghost gun purchase, is distinct from the conduct stated in the second element, the actor's state of mind.  Contrary to defendant's argument, nothing about the language of the statute requires the ghost gun purchase occur in New Jersey or that the first and second elements of Paragraph k constitute a single element.

Accordingly, we are not persuaded the motion judge misapplied the territorial jurisdiction statute.  Defendant argues N.J.S.A. 2C:1-3(a)(1) is not applicable to the charges at issue here because "that section requires either the conduct o[r] the result of the conduct be committed in New Jersey."  Instead,

defendant contends the exception to territorial jurisdiction under N.J.S.A. 2C:1-3(b)[6] applies because the charged conduct is not a crime in Pennsylvania and the State presented "no evidence that [he] owned or intended to assemble the firearms."

Although the evidence presented to the grand jury revealed the purchase of ghost gun kits occurred outside this state, and was lawful in that jurisdiction, the State presented sufficient evidence from which the jury could infer defendant purchased the kits with the purpose of manufacturing firearms in New Jersey, satisfying the culpability element under N.J.S.A. 2C:1-14(h)(3)(b), and territorial jurisdiction under N.J.S.A. 2C:1-3(a). As the motion judge found, the State presented evidence that defendant and Tucker purchased five ghost gun kits with "two slides and two extended magazines" and transported them to New Jersey. Further, they were stopped in defendant's car in the vicinity of his

---

[6] N.J.S.A. 2C:1-3(b) provides N.J.S.A. 2C:1-3(a)(1):

> [D]oes not apply when either causing a specified result or a purpose to cause or danger of causing such a result is an element of an offense and the result occurs or is designed or likely to occur only in another jurisdiction where the conduct charged would not constitute an offense, unless a legislative purpose plainly appears to declare the conduct criminal regardless of the place of the result.

Trenton address. That evidence and the reasonable inferences that could be drawn therefrom demonstrated defendant's "purpose to manufacture or otherwise assemble a firearm" in this state, satisfying the second element of Paragraph k.

We therefore discern no error in the DAG's grand jury instruction that Paragraph k required the jurors to consider two elements, "the purchase and the intent to readily manufacture." Having acknowledged the purchasing of ghost gun kits was legal in Pennsylvania, the DAG reasonably instructed the jury "[t]he intent was in New Jersey because they brought the kits into New Jersey for the purpose of manufacturing them."

IV.

Lastly, we reject defendant's assertions, raised in his second point, "the State violated its obligation to present the case in a fair manner" and, as such, the motion judge failed to dismiss the indictment on that ground. Again, we are guided by well-settled authority.

In establishing a prima facie case, "the State may not deceive the grand jury or present its evidence in a way that is tantamount to telling the grand jury a 'half-truth.'" Hogan, 144 N.J. at 236. To warrant a dismissal of the indictment, the grand jury instructions must be "blatantly wrong"; incomplete or imprecise

instructions are not enough.  State v. Triestman, 416 N.J. Super. 195, 205 (App.

Div. 2010) (quoting State v. Hogan, 336 N.J. Super. 319, 344 (App. Div. 2001)).

Thus, prosecutorial misconduct should not be used as a means to dismiss an

indictment, unless it "is extreme and clearly infringes upon the [grand] jury's

decision-making function," State v. Murphy, 110 N.J. 20, 35 (1988) (alteration

in original), and "amounted to an intentional subversion of the grand jury

process," ibid.

"[A]n indictment should not be dismissed unless the prosecutor's error was

clearly capable of producing an unjust result.  This standard can be satisfied by

showing that the grand jury would have reached a different result but for the

prosecutor's error."  Hogan, 336 N.J. Super. at 344.

Having concluded the DAG properly instructed the jury on the elements

of Paragraph k, we are not convinced her reading of the statute was "blatantly

wrong," requiring dismissal of the indictment.  Further, as the motion judge

found, and the grand jury transcript reveals, the DAG's responses to the grand

jurors' questions were proper.  To the extent the DAG opined on any facts

presented at the hearing, she twice reminded the jurors that anything she said

was not evidence, and that only their recollection controlled.  Nor do we discern

reversible error in the DAG's curtailing the jury's inquiry as to whether

23

defendant and Tucker were simply "passing through" New Jersey. There was no evidence adduced at the grand jury hearing to support that inference. On the contrary, defendant's car was stopped by police in the vicinity of his Trenton address, not on an interstate highway.

To the extent not addressed, any remaining contentions lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-3118-23