287 N.J. Super. 128 (1996)
670 A.2d 583
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
FERNANDO AGUIRRE, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted December 12, 1995.
Decided January 26, 1996.
*130 Before Judges MICHELS, BAIME, and KIMMELMAN.
Deborah T. Poritz, Attorney General, attorney for appellant (James E. Jones, Jr., Deputy Attorney General, of counsel and on the letter-brief).
Susan L. Reisner, Public Defender, attorney for respondent (Frank J. Howley, Designated Counsel, on the letter-brief).
The opinion of the court was delivered by BAIME, J.A.D.
At issue in this appeal is whether the Law Division was correct in dismissing the indictment against defendant because of a twenty month delay between the commission of the crime and the initiation of the prosecution. We hold that defendant failed to establish actual prejudice and an illegitimate reason for delay. We thus reverse the Law Division's order and reinstate the indictment.

I.
After receiving information from a confidential informant, Detective Steven Mundorff of the State Police arranged to meet defendant at the Champagne Porch Bar on January 11, 1993. Following extensive negotiations, defendant on the following day allegedly sold one ounce of cocaine to the officer for $1,000. No arrest was made. Instead, the detective made several unsuccessful attempts to engage defendant in larger transactions.
In February 1993, Detective Mundorff was transferred from the Narcotics Unit, and the investigation was assigned to other officers. Subsequent attempts to restore contact with defendant proved unavailing. These attempts included periodic criminal *131 record checks to determine whether defendant was incarcerated in another jurisdiction. The State Police also requested, and was granted by the Postal Inspector, a "mail cover" to determine whether defendant resided at an address several officers believed to be his temporary home. In addition, the State Police requested and received from the municipal building inspector the names of all occupants of that address. Detective James Fish testified that he continued his efforts to locate defendant whenever he "had time." However, his handwritten notes contained only one specific reference relevant to defendant's case.
On August 9, 1994, a complaint and warrant were filed seeking defendant's arrest. Defendant's name was fed into the NCIC computer as "a wanted person" the next day. On September 14, 1994, the grand jury indicted defendant for second degree distribution of cocaine (N.J.S.A. 2C:35-5a(1) and N.J.S.A. 2C:35-5b(2)), second degree possession of the same drug with intent to distribute (N.J.S.A. 2C:35-5a(1) and N.J.S.A. 2C:35-5b(2)), and third degree possession of the same drug (N.J.S.A. 2C:35-10a(1)). Defendant was arrested on February 24, 1995, while traveling on the New Jersey Turnpike.
Following an evidentiary hearing, the Law Division granted defendant's motion to dismiss the indictment. The court found that the bar in which the crime allegedly had occurred catered to a "transient" population and thus that the delay in initiating prosecution had precluded defendant from finding relevant witnesses and conducting an effective defense. The court also determined that the State failed to establish a legitimate reason for the delay. While noting that the internal efforts of the State Police to accumulate additional evidence against defendant justified a brief delay in bringing charges, the court concluded that the twenty month time period was oppressive and constituted a violation of due process.

II.
The Due Process Clause imposes a limit on the extent to which prosecuting authorities may delay initiating a criminal *132 prosecution after discovering an offense has been committed. United States v. Lovasco, 431 U.S. 783, 789, 97 S.Ct. 2044, 2048, 52 L.Ed.2d 752, 758 (1977); United States v. Marion, 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468, 481 (1971). The due process inquiry focuses on whether the delay "violates those `fundamental conceptions of justice which lie at the base of our civil and political institutions' and which define `the community's sense of fair play and decency.'" United States v. Lovasco, 431 U.S. at 790, 97 S.Ct. at 2049, 52 L.Ed.2d at 759 (citations omitted). Unlike analysis under the Sixth Amendment's Speedy Trial Clause, which involves a four-factor balancing test and under which prejudice to the defense is presumed from an unusually long delay between indictment and trial, see Doggett v. United States, 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992); Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); State v. Szima, 70 N.J. 196, 358 A.2d 773, cert. denied, 429 U.S. 896, 97 S.Ct. 259, 50 L.Ed.2d 180 (1976), claims under the Due Process Clause arising from undue pre-indictment or pre-arrest delay are measured by a far more rigorous standard. In order to prevail, a defendant must demonstrate "both that (1) there was no legitimate reason for the delay and (2) [defendant] was prejudiced thereby." State v. Rodriguez, 112 N.J. Super. 513, 515, 271 A.2d 905 (App.Div. 1970); see also State v. Roundtree, 118 N.J. Super. 22, 28-29, 285 A.2d 564 (App.Div. 1971).
There are several reasons for the disparity in treatment between due process and speedy trial claims. First, the applicable statute of limitations constitutes the primary guaranty against instituting stale criminal charges. United States v. Marion, 404 U.S. at 322, 92 S.Ct. at 464, 30 L.Ed.2d at 479. Such statutes represent legislative assessments of the relative interests of the prosecution and the defendant in administering and receiving justice, and are enacted for the repose of society and of those who may have lost their means of defense. Ibid. Second, the prosecution often has perfectly legitimate reasons for delaying an indictment, such as to gather additional evidence against the accused or to broaden the investigation. United States v. Lovasco, 431 U.S. *133 at 791, 97 S.Ct. at 2049-50, 52 L.Ed.2d at 759-60. Prosecutors should not be discouraged from thoroughly investigating possible crimes, particularly those involving multiple participants or multiple transactions. Id. at 793, 97 S.Ct. at 2050, 52 L.Ed.2d at 761. Third, insisting on immediate prosecution would pressure prosecutors into resolving doubtful cases in favor of early  and perhaps unwarranted  arrests or indictments. Ibid. We should not place prosecutors "in a constitutional vise" by encouraging hasty and ill-considered arrests and prosecutions. Note, Pre-Arrest Delay: Evolving Due Process Standards, 43 N.Y.U.L.Rev. 722, 728 (1968). Fourth, the core values underlying the Speedy Trial and Due Process guarantees overlap but are nevertheless quite different. Inordinate delay between arrest and trial or indictment and trial may impair a defendant's ability to present an effective defense. However, the major evils combatted by the Speedy Trial Clause exist quite apart from actual or possible prejudice to the ability of the accused to defend against pending criminal charges. Specifically, arrest or indictment is a public act that may severely interfere with the defendant's liberty, whether or not he is free on bail, and that may disrupt his employment, drain his financial resources, curtail his associations, create anxiety and subject him to public obloquy. See United States v. MacDonald, 456 U.S. 1, 8, 102 S.Ct. 1497, 1502, 71 L.Ed.2d 696, 703 (1982). In contrast, the Due Process Clause in the context of pre-indictment or pre-arrest delay is confined to protecting the ability of the defendant to mount a defense against the prosecution's charges.
Against this backdrop, we first consider whether defendant established prejudice by reason of the twenty month delay in initiating prosecution. The law is well-settled that actual prejudice, not possible or presumed prejudice, is required to support a due process claim. United States v. Beszborn, 21 F.3d 62, 66 (5th Cir.), cert. denied sub nom. Westmoreland v. United States, ___ U.S. ___, 115 S.Ct. 330, 130 L.Ed.2d 288 (1994); United States v. Huntley, 976 F.2d 1287, 1290 (9th Cir.1992); United States v. LeQuire, 943 F.2d 1554, 1560 (11th Cir.1991), cert. denied, 505 *134 U.S. 1223, 112 S.Ct. 3037, 120 L.Ed.2d 906 (1992); United States v. Warren, 772 F.2d 827, 836 (11th Cir.1985), cert. denied sub nom. Moore v. United States, 475 U.S. 1022, 106 S.Ct. 1214, 89 L.Ed.2d 326 (1986); Stoner v. Graddick, 751 F.2d 1535, 1542 (11th Cir.1985). As we pointed out earlier, "the protection from lost testimony "generally falls solely within the ambit of the statute of limitations." United States v. Moran, 759 F.2d 777, 782 (9th Cir.1985), cert. denied, 474 U.S. 1102, 106 S.Ct. 885, 88 L.Ed.2d 920 (1986). In the context of a due process claim, the defendant must show "the delay caused `actual and substantial prejudice'" endangering his right to a fair trial and "must present concrete evidence showing material harm." United States v. Anagnostou, 974 F.2d 939, 941-42 (7th Cir.1992), cert. denied, 507 U.S. 1050, 113 S.Ct. 1943, 123 L.Ed.2d 649 (1993). Therefore, "[v]ague and conclusory allegations of prejudice resulting from the passage of time and the absence of witnesses are insufficient...." United States v. Jenkins, 701 F.2d 850, 855 (10th Cir.1983). When, as here, the claim of prejudice involves the unavailability of witnesses, the courts have consistently required the defendant to specify with particularity and to provide some evidence of how the witnesses' testimony would have benefitted the defense. See, e.g., United States v. Huntley, 976 F.2d at 1290-91; United States v. Anagnostou, 974 F.2d at 942; United States v. Brown, 742 F.2d 359, 362 (7th Cir.1984). Mere speculative allegations regarding the beneficial testimony an unavailable witness might have given are insufficient to support a finding of prejudice. United States v. Anagnostou, 974 F.2d at 942. In addition, the defendant must show that he made some diligent effort to locate the unavailable witness. United States v. Brown, 742 F.2d at 362.
Defendant in the present case fell far short of satisfying this stringent burden. Other than an oblique and cryptic reference to the defense of entrapment, the record is barren of anything suggesting how defendant's ability to defend against the State's charges was impaired. In addition, despite the general conclusory claim that witnesses became unavailable, there is not *135 one iota of evidence indicating that defendant and his attorney exerted any efforts to locate customers or employees of the bar who might have been of some assistance to the defense. Indeed, there is no indication in the motion transcript that defense counsel even visited the bar, spoke to present employees or reviewed records disclosing the names and addresses of prior employees.
The two-pronged due process test is stated in the conjunctive, and we thus need go no further than conclude that defendant failed to establish actual prejudice. However, we add for the sake of completeness that defendant has failed to establish an illegitimate reason for the delay in prosecution. At the outset, we note that questions concerning the reasons for delay in executing an arrest or returning an indictment have received uneven treatment by the federal courts. Several of the federal courts of appeals require the defendant to demonstrate that the prosecutor deliberately delayed initiating the prosecution in order to gain an unfair tactical advantage. See, e.g., United States v. Beszborn, 21 F.3d at 65-66; United States v. LeQuire, 943 F.2d at 1560; United States v. Vaughn, 510 F. Supp. 206, 208 (D.N.J. 1981). These holdings have been fueled by dicta in several Supreme Court decisions indicating the defendant must prove that the prosecutor's delay in bringing the indictment "was a deliberate device to gain an advantage over him and that it caused him actual prejudice in presenting his defense." United States v. Gouveia, 467 U.S. 180, 192, 104 S.Ct. 2292, 2299, 81 L.Ed.2d 146, 157 (1984); see also United States v. Marion, 404 U.S. at 324, 92 S.Ct. at 465, 30 L.Ed.2d at 481. But even assuming, as several other courts have held, that a prosecutor's mere negligence suffices to establish an "illegitimate" reason for a lengthy delay, see Howell v. Barker, 904 F.2d 889, 895 (4th Cir.), cert. denied, 498 U.S. 1016, 111 S.Ct. 590, 112 L.Ed.2d 595 (1990); United States v. Barket, 530 F.2d 189, 194-96 (8th Cir.1976), defendant's proofs in this case did not meet that standard. The initial decision not to arrest defendant after the January transaction was justifiable. The transaction involved a relatively large quantity of drugs. It is common knowledge that the business of drug distribution is carried on cautiously and *136 furtively and in as many different ways and by as many conceivable methods as human ingenuity can devise to escape detection and criminal consequences. Cf. State v. Romeo, 43 N.J. 188, 207, 203 A.2d 23 (1964), cert. denied, 379 U.S. 970, 85 S.Ct. 668, 13 L.Ed.2d 563 (1965). The State Police had the right, if not the duty, to determine whether others were involved and whether the source of the distribution chain could be identified and those culpable brought to justice. While perhaps the State Police could have exerted greater efforts in their attempt to locate and arrest defendant, this is far too slim a reed upon which to suppress an otherwise valid prosecution. It bears repeating that judges are not free "to abort criminal prosecutions simply because they disagree with a prosecutor's judgment as to when to seek an indictment." United States v. Lovasco, 431 U.S. at 790, 97 S.Ct. at 2049, 52 L.Ed.2d at 759.
The order dismissing the indictment is reversed and the matter is remanded to the Law Division for trial.