687 A.2d 344

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. JAMES LITTLE, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted December 17, 1996—Decided January 23, 1997.

574

Before Judges MICHELS and MUIR, Jr.

*Susan L. Reisner,* Public Defender, attorney for appellant (*Brian J. Neff,* Designated Counsel, of counsel and on the brief).

*Maryann K. Bielamowicz,* Mercer County Prosecutor, attorney for respondent (*Thomas P. Meidt,* Assistant Mercer County Prosecutor, of counsel and on the letter brief).

The opinion of the court was delivered by

MUIR, Jr., J.A.D.

A jury found defendant guilty of possession of "crack" cocaine (*N.J.S.A.* 2C:35–10a(1), count one); possession of the same cocaine with intent to distribute (*N.J.S.A.* 2C:35–5a(1), –5b(3), count two); distribution of the same cocaine (*N.J.S.A.* 2C:5a(1), –5b(3), count three); possession with intent to distribute the same cocaine within 1,000 feet of school property (*N.J.S.A.* 2C:35–7, –5a(1), –5b(3), count four); and distribution of the same cocaine within 1,000 feet of school property (*N.J.S.A.* 2C:35–7, –5b(3), count five). The trial court merged the first four counts into count five and sentenced defendant to four years with the three-year mandatory

parole ineligibility term required by *N.J.S.A.* 2C:35–7. The court also imposed appropriate monetary penalties as well as a driver's license suspension.

Defendant appeals, contending:

I.   THE PHOTOGRAPHIC IDENTIFICATIONS OF DEFENDANT WERE IMPERMISSIBLY AND UNNECESSARILY SUGGESTIVE AND SHOULD HAVE BEEN SUPPRESSED. (not raised at trial level)

II.  THE IN–COURT IDENTIFICATION OF DEFENDANT BY VITKOSKY SHOULD HAVE BEEN EXCLUDED BECAUSE THE PHOTO IDENTI-FICATIONS WERE SO IMPERMISSIBLY SUGGESTIVE THAT THEY GAVE RISE TO A SUBSTANTIAL LIKELIHOOD OF IRREPARABLE MISIDENTIFICATION. (not raised at trial level)

III. DEFENDANT'S CONVICTION SHOULD BE REVERSED BECAUSE THE UNNECESSARY DELAY IN HIS ARREST AND INDICTMENT SEVERELY PREJUDICED HIS ABILITY TO PRESENT A DEFENSE.

IV.  DEFENDANT'S CONVICTION MUST BE REVERSED BECAUSE THE INEFFECTIVE ASSISTANCE HE RECEIVED FROM TRIAL COUN-SEL PREVENTED DEFENDANT FROM RECEIVING A FAIR TRIAL.

V.   THE SENTENCE IMPOSED BY THE TRIAL COURT WAS EXCES-SIVE: THE MITIGATING FACTORS OUTWEIGH THE AGGRAVATING FACTORS IN THIS MATTER, THEREFORE, DEFENDANT SHOULD HAVE BEEN SENTENCED TO A THREE YEAR TERM. (not raised at trial level)

We affirm the judgment of conviction. We find the issues raised under Points I, II, III, V, and the claim of ineffective assistance of counsel for failure to seek a *Wade* hearing to be without merit. *See R.* 2:11–3(e)(2). Our affirmance is without prejudice to defendant's right to raise on post-conviction relief application any remaining ineffective assistance of counsel claims.

## I.

Defendant's conviction stemmed from a summer-long undercover drug operation in Trenton. The operation, aimed at drug dealing within 1,000 feet of Trenton schools, was designed to clear from the path of school children any drug dealers operating on and around school property.

The State's evidence disclosed defendant's participation in a sale of crack cocaine to Detective Allan Vitkosky and an unnamed

informant. On July 7, 1993, in late afternoon, Detective Vitkosky, working undercover, conducted an hour and fifteen-minute surveillance of 150 Cuyler Avenue from his automobile. The area around the house was a beehive of activity that suggested drug dealing.

Vitkosky, through an informant, contacted defendant, who negotiated the sale of crack cocaine. Defendant approached Vitkosky, who sat in the driver's seat of the car, and told both Vitkosky and the informant that an individual who just left the 150 Cuyler Avenue house had cocaine for sale. Before seeking out the cocaine supplier, defendant requested a $5 fee for arranging the drug sale. When Vitkosky agreed, defendant left to find the dealer.

Defendant subsequently met with Vitkosky as the latter sat in his car in the area of Cuyler and Walnut Avenues. Defendant told Vitkosky to drive to an alleyway behind 150 Cuyler.

When Vitkosky arrived at the alleyway, defendant and the dealer approached his car. The dealer had a bag containing the cocaine. The dealer distributed $30 worth of cocaine to both Vitkosky and the informant. As the dealer distributed the cocaine, defendant continually asked Vitkosky for the $5 fee, which Vitkosky ultimately paid. As he drove away, Vitkosky, through his rear-view mirror, saw defendant holding the bag of cocaine and dividing up the money given to the dealer. Five to seven minutes elapsed between the time Vitkosky first met defendant and the completion of the drug sale in the alley. In his departmental report of the incident, Vitkosky gave a detailed description of the defendant. There is no challenge to the accuracy of that description.

Law enforcement officials arrested defendant on September 3, 1993, at the conclusion of the undercover operation. The trial ensued. Vitkosky testified to the foregoing as well as to his out-of-court identification. The identification occurred when Vitkosky selected a photograph of defendant taken from a group of photographs of all the persons found at 150 Cuyler during execution of a search warrant. The trial court admitted the photograph in

evidence after Vitkosky stated that on July 22, 1993, he identified defendant from a group of photographs and after the officer who took it said it depicted defendant on that date. The other identification occurred on September 13, 1993, ten days after defendant's arrest when Vitkosky viewed defendant's arrest photograph and positively identified defendant. Defense counsel made no pretrial motion to suppress the identification.

While defense counsel raised no *Wade* [1] issue, he did carefully explore on cross-examination of Vitkosky the circumstances of the out-of-court identifications and the officer's description of defendant in his departmental report. The trial court specifically charged the jury, in depth, on the State's burden of proof on the issue of identification and the need for the jury to determine the reliability, strength, and credibility of Vitkosky's identification of defendant. *See State v. Farrow,* 61 *N.J.* 434, 451, 294 *A.*2d 873 (1972), *cert. denied,* 410 *U.S.* 937, 93 *S.Ct.* 1396, 35 *L.Ed.*2d 602 (1973).

## II.

Defendant argues the trial court erred when it allowed Vitkosky to make an in-court identification of the defendant. He argues the out-of-court identification was impermissibly suggestive and tainted the undercover officer's in-court identification, undermining its reliability to such an extent that a very substantial likelihood of misidentification existed. In support of his argument, he notes Vitkosky made his identification from single photographs, not an array of other persons with similar features. The State counters that the July 22, 1993, identification was not from a single photograph but a series of five photographs taken of all the persons found at 150 Cuyler when police executed the search warrant.

---

[1] *United States v. Wade,* 388 *U.S.* 218, 87 *S.Ct.* 1926, 18 *L.Ed.*2d 1149 (1967).

■ Challenges to convictions based on in-court identifications following out-of-court photographic identification procedures are reviewed in this state under the two-step procedure established by the United States Supreme Court. *See State v. Madison,* 109 *N.J.* 223, 233, 536 *A.*2d 254 (1988). The first step is to determine whether the challenged photographic identification procedure was impermissibly suggestive. *Id.* at 232, 536 *A.*2d 254. If it was, the second issue is whether, under the totality of the circumstances of the case, the suggestive identification created a " 'very substantial likelihood of irreparable misidentification.' " *Ibid.* (quoting *Simmons v. United States,* 390 *U.S.* 377, 384, 88 *S.Ct.* 967, 971, 19 *L.Ed.*2d 1247, 1253 (1968)). This test reflects the fact that not all impermissibly suggestive identification procedures engender a very substantial likelihood of irreparable misidentification. Identifications which demonstrate the witness's perception of the suspect, unaided by any suggestive identification procedure, may provide sufficient foundation for the reliability of in-court identification. *Madison, supra,* 109 *N.J.* at 232, 536 *A.*2d 254. In the oft quoted words of *Manson v. Brathwaite,* 432 *U.S.* 98, 114, 97 *S.Ct.* 2243, 2253, 53 *L.Ed.*2d 140, 154 (1977), "[r]eliability is the linchpin in determining the admissibility of identification testimony...."

■ The trial court was not called upon to utilize the two-step test because defense counsel did not seek a *Wade* hearing. The failure to seek a *Wade* hearing, however, does not mandate a reversal. A review of the record suggests this was a matter of trial strategy. The defense sought to establish Vitkosky confused defendant with his look-alike brother. The State, however, defeated the strategy by establishing the brother was in jail at the time of the crime. Although there is decisional support for the premise that it is impermissibly suggestive to tell an undercover officer the photo spread contained photographs of the persons arrested at time of the warrant execution, *see United States v. Lewin,* 900 *F.*2d 145, 149 (8th Cir.1990), we need not resolve the suggestibility issue because we are satisfied the totality of the circumstances reflected in the record demonstrates the reliability of Vitkosky's

identification independent of the photographic identification procedure.

There can be no dispute that a trained undercover police officer has heightened awareness of the need for proper identification of persons who engage in drug purveyance. Vitkosky was a trained and experienced illicit-drug-activity investigator. As an undercover officer, he was not only trained to be observant but also had a strong incentive to be observant. Vitkosky had significant opportunity to observe defendant close up during the very early evening hours of the July date in question. During the five to seven minutes it took to arrange and complete the undercover sale of cocaine, Vitkosky had at least three face-to-face unhindered opportunities to view defendant: when they first met to set up the transaction; when they met in the alleyway to carry it out; and during the entire duration the sale took place when defendant continually solicited his $5 fee for arranging the buy. When these opportunities are considered with the degree of attention and the level of the officer's certainty in his identification, any corrupting effect of the out-of-court identification procedure is eradicated. On the record before us, we are satisfied the circumstances demonstrate the reliability of the in-court identification independent of the photographs reviewed pretrial. *See Lewin, supra,* 900 *F*.2d at 149. There was no substantial likelihood of misidentification.

Beyond that, the trial court's explicit identification charge required the jury to consider the reliability of Vitkosky's identification. We must assume the jury followed the court's instruction. *State v. Manley,* 54 *N.J.* 259, 271, 255 *A.*2d 193 (1969); *State v. Coruzzi,* 189 *N.J.Super.* 273, 301, 460 *A.*2d 120 (App.Div.), *certif. denied,* 94 *N.J.* 531, 468 *A.*2d 185 (1983). The jury verdict evidences its conclusion Vitkosky's identification was reliable.

Consequently, we also find no validity to defendant's argument he received ineffective assistance due to defense counsel's failure to seek a *Wade* hearing. To succeed on an actual ineffectiveness of counsel claim, not only must defendant show serious profession-

al deficiencies by his counsel, but he must also demonstrate "a reasonable probability, but for counsel's unprofessional errors the result of the proceeding would have been different." *Strickland v. Washington,* 466 *U.S.* 668, 694, 104 *S.Ct.* 2052, 2068, 80 *L.Ed.*2d 674, 698 (1984); *State v. Fritz,* 105 *N.J.* 42, 50, 519 *A.*2d 336 (1987). Since there was no substantial likelihood of misidentification, a *Wade* hearing would not have produced a different result. Defendant's Sixth Amendment right to counsel was not transgressed in that regard.

### *III.*

Defendant further argues his conviction should be reversed because the delay between the undercover drug purchase on July 7, 1995, and his indictment and arrest in early September violated his due process rights under the Fourteenth Amendment. We disagree.

A due process claim of this nature requires defendant to prove (1) no legitimate reason existed for the delay; and (2) the delay prejudiced him. *State v. Aguirre,* 287 *N.J.Super.* 128, 132, 670 *A.*2d 583 (App.Div.), *certif. denied,* 144 *N.J.* 585, 677 *A.*2d 758 (1996). In *Aguirre,* we explicated the predicates giving rise to those criteria. They need not be articulated here. It suffices to note that possible or presumed prejudice is not enough. *Id.* at 133, 670 *A.*2d 583. The delay must cause " 'actual and substantial prejudice' " that jeopardizes the defendant's right to a fair trial and must be established by " 'concrete evidence showing material harm.' " *Id.* at 134, 670 *A.*2d 583 (quoting *United States v. Anagnostou,* 974 *F.*2d 939, 941–42 (7th Cir.1992), *cert. denied,* 507 *U.S.* 1050, 113 *S.Ct.* 1943, 123 *L.Ed.*2d 649 (1993)).

Defendant contends the delay "made it considerably more difficult for defendant to reconstruct where he was at the date and time in question and thereby present an alibi to the jury." "A mere claim of general inability to reconstruct the events of the period in question" does not demonstrate prejudice. *State v.*

*Roundtree,* 118 *N.J.Super.* 22, 29, 285 *A.*2d 564 (App.Div.1971). Defendant must "specify with particularity" how he was prejudiced. *Aguirre, supra,* 287 *N.J.Super.* at 134, 670 *A.*2d 583. Defendant fails to meet the rigors of his burden to show prejudice.

█ Since the test is in the conjunctive, we need go no further. *Id.* at 135, 670 *A.*2d 583. That notwithstanding, we are satisfied defendant failed to establish the absence of legitimacy for the delay. The undercover operation was part of an organized city-wide activity designed to clear drug purveyors from the school areas of Trenton. It had extensive scope. Its secrecy was an essential part of its success. That secrecy would have been vitiated had defendant's arrest occurred before the entire operation and its related investigations were completed. As we noted in *Aguirre,* "[i]t is common knowledge that the business of drug distribution is carried on cautiously and furtively and in as many different ways and by as many conceivable methods as human ingenuity can devise to escape detection and criminal consequences." *Id.* at 135–36, 670 *A.*2d 583. The police had the right to continue the operation before acting on the evidence secured. They executed their warrants in late July, and defendant was indicted and arrested within the first days of September. These circumstances demonstrate no basis for concluding there was no legitimate reason for delay.

## *IV.*

Defendant finds his sentence excessive. We have considered defendant's sentence in light of the record, arguments, and applicable law and conclude it is well within the sentencing criteria of the Criminal Code as explicated by case law. *See State v. Ghertler,* 114 *N.J.* 383, 555 *A.*2d 553 (1989); *State v. Roth,* 95 *N.J.* 334, 471 *A.*2d 370 (1984). The sentence does not shock our judicial conscience. *See Roth, supra,* 95 *N.J.* at 364, 471 *A.*2d 370.

## *V.*

Defendant asserts he was denied effective assistance of counsel for a number of reasons, one of which was the failure to seek a

*Wade* hearing, which we have resolved. As to the remaining contentions, we find them prematurely raised.

Ineffectiveness claims are specially suited for post-conviction review because they could not be raised in the prior proceeding and most often involve allegations and evidence outside the record. *State v. Preciose,* 129 *N.J.* 451, 460, 609 *A.*2d 1280 (1992); *accord State v. Martini,* 144 *N.J.* 603, 609, 677 *A.*2d 1106 (1996). Accordingly, we do not address the ineffectiveness issues remaining.

Affirmed.