# RECORD IMPOUNDED

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3169-23

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JESUS E. REYES-RODRIGUEZ,

     Defendant-Appellant.

_____

**APPROVED FOR PUBLICATION**

**January 14, 2025**

**APPELLATE DIVISION**

     Argued December 18, 2024 – Decided January 14, 2025

     Before Judges Mayer, Rose and Puglisi.

     On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 21-08-1000.

     Robin Kay Lord (Law Offices of Robin Kay Lord, LLC) argued the cause for appellant.

     Monica do Outeiro, Assistant Prosecutor, argued the cause for respondent (Raymond S. Santiago, Monmouth County Prosecutor, attorney; Monica do Outeiro, of counsel and on the brief).

The opinion of the court was delivered by

ROSE, J.A.D.

In this interlocutory appeal, we consider the propriety of a bench warrant issued by the Law Division following defendant Jesus E. Reyes-Rodriguez's failure to appear in person for a pretrial conference, notwithstanding his virtual appearance at this conference and nearly all prior court hearings. A non-citizen of the United States and Mexican national, defendant was deported to his homeland after he was indicted for third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(1), and fourth-degree criminal sexual contact, N.J.S.A. 2C:14-3(b).[1] The motion court issued the bench warrant, at the State's request, to serve as a detainer should defendant illegally reenter the United States or if the State elected to extradite defendant from Mexico. The State, however, acknowledged the Monmouth County Prosecutor's Office (MCPO) was unlikely to authorize extradition on these third- and fourth-degree charges.

Before the motion court, defendant moved to vacate the warrant and dismiss the indictment. Citing State v. Lopez-Carrera, 245 N.J. 596 (2021), defendant argued his failure to appear in person was not willful. Rather, defendant claimed his removal from the United States prevented his in-person appearance and, in any event, Rule 3:9-1 does not require a defendant's physical

---

[1] Defendant's two coworkers were charged with similar offenses in the remaining counts of the ten-count Monmouth County indictment. They are not parties to this appeal.

presence in court.  Defendant also asserted the State could have sought from the federal government "deferred action to delay [his] deportation . . . or an administrative stay of removal."  Thus, the State's failure to request this relief from the federal authorities – or seek his extradition pursuant to our country's treaty with Mexico – warranted dismissal of the indictment as the State "forfeited its interest in the instant prosecution."  Defendant also sought dismissal of the indictment on speedy trial grounds.  In the alternative, defendant sought permission to appear at all court proceedings remotely from Mexico.

The motion court denied all requested relief.  In a written statement of reasons accompanying a March 7, 2024 order, the court rejected defendant's reliance on Lopez-Carrera.  The judge concluded state court judges are not authorized "to detain defendants to thwart their removal."  Nor was the court persuaded the State was estopped from prosecuting the offenses charged in the indictment or required to extradite defendant on these charges.  Citing an administrative order issued by our Supreme Court, Order:  The Future of Court Operations — Updates to In-Person and Virtual Court Events (Oct. 27, 2022) [hereinafter Virtual Court Order], the court rejected defendant's alternate application to appear remotely at all future proceedings.  The court reasoned it

was not empowered to enforce a probationary or custodial sentence if defendant were convicted at trial or by guilty plea.

We thereafter denied defendant's motion for leave to appeal from the March 7, 2024 order.  State v. Reyes-Rodriguez, No. AM-0386-23 (App. Div. Apr. 15, 2024).  The Supreme Court granted defendant's ensuing motion for leave to appeal from our order, and summarily remanded the matter for our consideration on the merits.  257 N.J. 593 (2024).

Having considered the supplemental briefs and oral argument, we now conclude the motion court mistakenly exercised its discretion by refusing to permit defendant to appear remotely.  We therefore reverse the March 7, 2024 order and remand for the court to permit defendant to participate remotely in all court hearings, including trial, as he remains unable to lawfully reenter the United States.  In doing so, we reject defendant's arguments that the court erroneously denied his motion to dismiss the indictment for lack of prosecution and on speedy trial grounds.  We therefore affirm in part, and reverse and remand in part, for proceedings consistent with this opinion.

We summarize the pertinent facts and events from the limited record provided on appeal.[2] In February 2021, L.M.[3] reported to police that "sometime in July 2020," defendant placed his hand in her shorts and "touch[ed] the side of her vagina" in Red Bank. L.M. was seventeen years old at the time of the alleged offense.

Defendant was charged by complaint-warrant with third-degree child endangerment and fourth-degree criminal sexual contact. At the time of his March 16, 2021 arrest, defendant was thirty-four years old with no prior criminal record. Accordingly, Pretrial Services recommended defendant's release on his own recognizance based on his public safety assessment (PSA) scores of "1" – the lowest rung of the six-level ladder – for risk of failure to appear and risk of new criminal activity. The State did not seek defendant's detention. See N.J.S.A. 2A:162-18(a)(1).

---

[2] Other than the September 5, 2023 bench warrant and the order, statement of reasons, and transcript of oral argument on defendant's present motions, the parties did not provide memorializing orders of the prior events or transcripts of those proceedings. See R. 2:5-4. These omissions do not hamper our review.

[3] We use initials to protect the privacy of the victim. See R. 1:38-3(c)(9); see also N.J.S.A. 2A:82-46.

The next day, on March 17, 2021, the court released defendant on Level III pretrial monitoring.[4]  That same day, defendant was detained by the Department of Homeland Security, Immigration and Customs Enforcement (ICE) and charged as removable for unlawful entry into the United States under the Immigration and Nationality Act, 8 U.S.C. §§ 1101-1537.

On August 27, 2021, defendant was indicted on the present charges.  In September 2021, an immigration judge ordered defendant removed to Mexico. In her written decision, the judge discredited defendant's testimony, finding his responses to questions about the present charges "evasive."

The same immigration judge later denied defendant's motions for a stay and to reopen the removal proceedings.  The judge considered the submission of defendant's child's mother, who explained defendant "gets nervous when he speaks and sometimes confuses his speech," and correspondence from a healthcare facility confirming the child's mother contacted the facility about "their daughter's sadness and anxiety over [defendant]'s detention."  But the judge determined defendant had not met the "heavy burden" of reopening his

---

[4]  The judge who issued the March 17, 2021 order was not the same judge who issued the order under review.

6

removal proceedings and concluded "[defendant]'s criminal charges constituted a significant part of [her] determination."

Defendant retained his present attorney in September 2021. In November 2021, defendant filed an emergent motion to revoke his pretrial release to prevent his removal. The State declined to join the motion, "request[] a detainer," or extend a plea offer to a disorderly persons offense. Shortly thereafter, defendant was deported to Mexico.

We glean from the record defendant appeared remotely for all but one scheduled court hearing, commencing with his arraignment on December 14, 2021. Defendant applied for pretrial intervention (PTI) in January 2022, but the State rejected his application. In July 2022, defendant appealed his PTI rejection to the Law Division.

Thereafter, on November 14, 2022, a bench warrant was issued for defendant's failure to appear at an unspecified conference. Apparently, that same day, defense counsel withdrew defendant's motion to revoke his release.

In December 2022, defendant refiled his PTI appeal; the State filed opposition; and on February 9, 2023 a second judge vacated the November 14, 2022 bench warrant. The judge's reasons for vacating the warrant are not reflected in the record.

A-3169-23

In April 2023, the State again rejected defendant's PTI application. Defendant appealed to the Law Division. On July 28, 2023, a third judge denied defendant's PTI appeal.

On September 5, 2023, the present judge issued a bench warrant for defendant's failure to appear at a "Discretionary Conference." The warrant indicates defendant was deported to Mexico.

The following month, on October 4, 2023, defendant moved to vacate the bench warrant and dismiss the indictment. After initial briefing and oral argument, defendant filed a supplemental brief, which the court permitted "in the interests of justice." The court afforded the State until February 19, 2024 to file a responding brief, but the State declined to do so. The court's order and decision followed on March 7, 2024.

## II.

We first consider defendant's challenges to the court's denial of his motion to dismiss the indictment. Ordinarily, an appellate court reviews a trial court's decision on a motion to dismiss an indictment for abuse of discretion. See State v. Saavedra, 222 N.J. 39, 55 (2015). "When the decision to dismiss relies on a purely legal question, however, we review that determination de novo." State

v. Twiggs, 233 N.J. 513, 532 (2018).  Defendant's renewed claims on this appeal invoke our de novo review.

We consider the dismissal of an indictment as "the last resort because the public interest, the rights of victims[,] and the integrity of the criminal justice system are at stake."  State v. Williams, 441 N.J. Super. 266, 272 (App. Div. 2015) (quoting State v. Ruffin, 371 N.J. Super. 371, 384 (App. Div. 2004)). Thus, a trial court should not dismiss an indictment "except 'on the clearest and plainest ground.'"  Ruffin, 371 N.J. Super. at 384 (quoting State v. Hogan, 336 N.J. Super. 319, 344 (App. Div. 2001)).

## A.

Defendant maintains the State's inactions warrant dismissal of the indictment.  In particular, defendant faults the State for failing to:  coordinate with immigration authorities pursuant to the "Toolkit for Prosecutors" promulgated by ICE; join his efforts to revoke his pretrial release; seek a detainer prior to his removal; or extradite him on the charges after issuance of the September 5, 2023 bench warrant.  Because defendant's remote appearance at all future court hearings will protect his right to a fair trial, we are not persuaded dismissal of the indictment is the proper remedy here.  See State v. Clark, 347 N.J. Super. 497, 508 (App. Div. 2002) (recognizing dismissal of an

indictment is a "drastic remedy" and "inappropriate where other judicial action will protect a defendant's fair trial rights").

We begin with the trial court's inability to detain defendant prior to his removal from the United States. The Criminal Justice Reform Act (CJRA), N.J.S.A. 2A:162-15 to -26, authorizes the trial court to detain a defendant when the State demonstrates no conditions of release "would reasonably assure the eligible defendant's appearance in court when required, the protection of the safety of any other person or the community, and that the eligible defendant will not obstruct or attempt to obstruct the criminal justice process." N.J.S.A. 2A:162-18(a)(1). In the present matter, however, the State did not move to detain defendant, who had no criminal history as reflected by his PSA scores. In its responding brief on appeal, the State maintains our Supreme Court in Lopez-Carrera held the CJRA prohibits a trial court from detaining a non-citizen defendant solely to avoid deportation prior to trial.

Similar to the allegations in the present matter, the defendant in Lopez-Carrera was charged with offenses relating to the attempted sexual assault of a minor. 245 N.J. at 606. On the same day the charges were issued against Lopez-Carrera, ICE lodged its detainer. Ibid.; see also 8 C.F.R. § 287.7(a) (explaining an ICE detainer "advise[s] another law enforcement agency that [ICE] seeks

custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien").

Also similar to the circumstances here, in view of Lopez-Carrera's low PSA scores, Pretrial Services recommended release on his own recognizance and the State did not move for detention. 245 N.J. at 607. Further, following his release, Lopez-Carrera was immediately detained by ICE officials. Ibid.

Eight months after he was indicted, ICE informed the State that Lopez-Carrera had exhausted his administrative appeals of his final removal order and would be deported. Ibid. Unlike the present matter, however, the State moved to revoke the defendant's pretrial release. Ibid. The trial court denied the motion and Lopez-Carrera was deported. Id. at 608. We granted the State leave to appeal, on an emergent basis, and summarily affirmed the trial court's order. Id. at 607. The Court affirmed our order. Id. at 627.

The Court in Lopez-Carrera also considered the State's motion for leave to appeal from two trial court orders releasing similarly-situated defendants in the consolidated, companion cases, State v. Juan C. Molchor and State v. Jose A. Rios. 245 N.J. at 603-06. Both defendants were charged with aggravated assault and criminal mischief stemming from the same incident. Id. at 603. Similar to Lopez-Carrera, Molchor and Rios had no prior convictions and low

risk PSA scores.  Id. at 603-04.  The trial court detained Molchor and Rios based only on their immigration status.  Id. at 604.  We reversed and remanded for reconsideration, and the trial court released both defendants with conditions.  Id. at 606.  We denied the State's emergent and ordinary applications for a stay. Ibid.  The Court granted the State leave to appeal and ultimately affirmed.  Id. at 606-07.

Pertinent to this appeal, in Lopez-Carrera, the Court analyzed the CJRA's plain language, commencing with "the relevant text provid[ing] for detention when no combination of conditions 'would reasonably assure the eligible defendant's appearance in court when required.'"  Id. at 613 (quoting N.J.S.A. 2A:162-18(a)(1)).  Referencing dictionary definitions of "appearance," the Court noted "[a] defendant's 'appearance in court' thus commonly refers to the voluntary act of showing up."  Id. at 614.  The Court determined a defendant's "appearance" refers to the defendant's voluntary conduct, not acts taken by a third party, such as immigration officials.  Id. at 617.  Accordingly, the Court held pretrial detention must be based on a defendant's voluntary behavior; not solely on the possibility the non-citizen defendant may be removed from the United States by immigration officials.  Id. at 625.  The Court concluded "a person's immigration status alone cannot be dispositive."  Ibid.

The Court also addressed the interplay between the State and federal officials, noting:

> Federal law provides for coordination between federal prosecutors and immigration officials after a non-citizen is arrested. 18 U.S.C. § 3142(d). Our criminal justice system functions best when the State has an opportunity to present its proofs to try to enforce the law, when defendants who stand accused can defend themselves in court, and when victims and witnesses can be heard and treated with dignity and respect. We therefore encourage ICE to coordinate with State prosecutors and allow the criminal justice system to complete its work while charges are pending against non-citizens in state court.

> [Id. at 603.]

The Court thus expressed its preference that ICE "refrain from deporting defendants while they await trial" in state court. Id. at 627.

Against these legal principles, we reject defendant's argument that the State forfeited its interest in prosecuting the offenses charged in the indictment. Similar to the defendants in Lopez-Carrera, defendant's low PSA scores and lack of criminal history favored release. Defendant's sole reason for seeking revocation of his release was to thwart his removal from the United States. Because a trial court is not authorized to detain a defendant based only on immigration status, we are satisfied the motion court correctly found the State's refusal to join defendant's motion to revoke his release or failure to seek a

detainer prior to his deportation did not warrant dismissal of the indictment. See id. at 625. Indeed, our Supreme Court encouraged – but did not mandate – the State work with ICE officials to allow State prosecutions to resolve the pending charges. Id. at 603.[5]

B.

Defendant next argues his right to a speedy trial was violated by the State's refusal to extradite him on the charges. He contends the indictment cannot stand pursuant to the four-factor balancing analysis enunciated by the United States Supreme Court in Barker v. Wingo, 407 U.S. 514, 530-33 (1972), as adopted by our Supreme Court in State v. Szima, 70 N.J. 196, 200-01 (1976).[6] The motion court briefly cited Barker, but did not address the guiding factors. In its responding brief, the State does not address defendant's speedy trial argument, but generally contends dismissal of the indictment would run counter to the

---

[5] Nor has defendant cited any authority that the State is required to extradite a defendant on pending charges when the defendant has been deported. However, defendant's contention is better assessed through the lens of his speedy trial argument.

[6] Defendant also cites the same unreported decision from this court that he cited before the trial court. An unpublished decision does not constitute precedent, is not binding upon us, and may not be cited except as permitted by Rule 1:36-3. We have considered defendant's contentions without reliance on our unpublished opinion.

Crime Victim's Bill of Rights, N.J.S.A. 52:4B-34 to -38, as the statute of limitations expires in November 2026. See N.J.S.A. 2C:1-6(b)(4) (providing, in pertinent part, a prosecution for criminal sexual contact and endangering the welfare of a child "must be commenced within five years of the victim's attaining the age of 18").

"The right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and imposed on the states by the Due Process Clause of the Fourteenth Amendment." State v. Tsetsekas, 411 N.J. Super. 1, 8 (App. Div. 2009) (citing Klopfer v. North Carolina, 386 U.S. 213, 222-23 (1967)). The United States Supreme Court has long held constitutional protections of due process apply to non-citizens within jurisdiction as well. See Wong Wing v. United States, 163 U.S. 228, 238 (1896); Plyler v. Doe, 457 U.S. 202, 212 (1982).

"Excessive delay in completing a prosecution can potentially violate a defendant's constitutional right to a speedy trial as a matter of fundamental fairness." State v. Farrell, 320 N.J. Super. 425, 445-46 (App. Div. 1999); see also Tsetsekas, 411 N.J. Super. at 8. The right to a speedy trial must be addressed with a careful analysis of the circumstances. Barker, 407 U.S. at 522.

"The only remedy" for a violation of a defendant's right to a speedy trial "is dismissal of the charge." State v. Cahill, 213 N.J. 253, 276 (2013).

The Barker analysis requires courts to consider and balance the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." Barker, 407 U.S. at 530. Courts are required to analyze each interrelated factor "in light of the relevant circumstances of each particular case." Tsetsekas, 411 N.J. Super. at 10. The factors are "non-exclusive," Cahill, 213 N.J. at 264, and no factor standing alone is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial," Barker, 407 U.S. at 533. A court must "engage in a difficult and sensitive balancing process." Ibid. The burden of demonstrating the Barker factors weigh in favor of dismissal lies with the defendant. See State v. Berezansky, 386 N.J. Super. 84, 99 (App. Div. 2006).

As a preliminary matter, notwithstanding our de novo review of defendant's speedy trial claims, "our function as an appellate court is to review the decision of the trial court, not to decide the motion tabula rasa." Est. of Doerfler v. Fed. Ins. Co., 454 N.J. Super. 298, 302 (App. Div. 2018). We could, therefore, remand for the motion court to consider defendant's contentions under the Barker analysis. However, we are convinced by our own independent

16

assessment of the record denial of defendant's motion was appropriate. Moreover, a remand for more explicit findings would only serve to delay the same disposition in this accelerated matter. In doing so, we note defendant neither requested the court amplify its decision under Rule 2:5-1(b), nor seeks a remand.

Applying the Barker factors in the present matter, we first consider the length of the delay. A trial date has not yet been scheduled in this matter. Defendant filed the present motion on October 4, 2023, one month after the September 5, 2023 bench warrant was issued and more than two years after issuance of the indictment on August 27, 2021. As our Supreme Court has recognized, "once the delay exceeds one year, it is appropriate to engage in the analysis of the remaining Barker factors." Cahill, 213 N.J. at 266.

We therefore turn to the reason for the delay. "Barker's second prong examines the length of a delay in light of the culpability of the parties." Tsetsekas, 411 N.J. Super. at 12 (citing Barker, 407 U.S. at 529).

Eighteen months of the time frame at issue is attributable to defendant. Commencing in January 2022, defendant applied for and was rejected from PTI; was placed on bench warrant status for nearly three months; refiled his PTI petition; appealed from the prosecutor's second rejection; and was unsuccessful

on appeal to the Law Division. See Farrell, 320 N.J. Super. at 446 ("Delay caused or requested by the defendant is not considered to weigh in favor of finding a speedy trial violation.").

However, we attribute to the State the delay in prosecution after issuance of the September 5, 2023 warrant. Although the State reasonably sought the warrant to preserve its right to extradite defendant under our country's treaty with Mexico, during oral argument before the motion court on January 25, 2024, the State acknowledged the MCPO could not commit to extraditing defendant on these third- and fourth-degree charges. To date, the State has not filed an extradition application.

Although we ascribe the delay in prosecution after September 5, 2023 to the State's refusal to extradite defendant, the eighteen-month time frame from August 27, 2021 to October 4, 2023 is attributed to defendant's PTI applications, including his brief bench warrant status. Under the totality of these circumstances, we cannot conclude the length of delay was "excessively long." See id. at 453.

Turning to the third Barker factor, a defendant's "assertion of [his] right to a speedy trial is measured heavily in the speedy trial analysis." Cahill, 213 N.J. at 274. Nonetheless, "[a] defendant has no duty to bring himself to trial;

18

the State has that duty." State v. Merlino, 153 N.J. Super. 12, 17 (App. Div. 1977) (quoting Barker, 407 U.S. at 527). Courts should consider "the frequency and force of the [defendant's] objections" in assessing whether the defendant properly invoked the right. Barker, 407 U.S. at 529.

Shortly after he was indicted, defendant endeavored to remain in the United States to confront the charges against him, culminating in the present motion shortly after the September 5, 2023 warrant was issued and the State indicated its reluctance to extradite him. On this record, we conclude the third Barker factor inures to defendant's benefit. We recognize, however, the weight ascribed to the third factor is somewhat buffered by defendant's delay in filing this motion which, as stated, followed eighteen months of litigation regarding his PTI application and his three-month bench warrant status.[7]

The fourth prong of the Barker analysis considers the prejudice "in the context of the interests the right is designed to protect. Those interests include prevention of oppressive incarceration, minimization of anxiety attributable to unresolved charges, and limitation of the possibility of impairment of the defense." Cahill, 213 N.J. at 266. We have also recognized "significant

---

[7] Defendant ascribes no blame to the five-month time frame between the filing of his present motion in October 2023 until the court's decision in March 2024.

prejudice may also arise when the delay causes the loss of employment or other opportunities, humiliation" and "the drain in finances incurred for payment of counsel or expert witness fees." Tsetsekas, 411 N.J. Super. at 13. "[P]roof of actual trial prejudice is not 'a necessary condition precedent to the vindication of the speedy trial guarantee.'" Id. at 13-14 (quoting Merlino, 153 N.J. Super. at 15-16). Cf. State v. Aguirre, 287 N.J. Super. 128, 133 (App. Div. 1996) (reiterating "[t]he law is well-settled that actual prejudice, not possible or presumed prejudice, is required to support a due process claim").

Defendant reprises his argument that the prejudice to him is "unquantifiable" in view of his deportation on the pending charges and "the hardship to his wife and two young daughters." We do not disagree.

On balance, however, we cannot conclude the Barker factors weigh in favor of dismissal of the indictment at this time. Most of the delay was attributed to defendant's PTI application process and he did not move to dismiss the indictment until the bench warrant was issued. Moreover, because we conclude a bench warrant was erroneously issued and defendant can participate remotely in all future proceedings, a trial in this matter can be scheduled forthwith.

III.

We turn to defendant's alternate contentions that the motion court erroneously issued the bench warrant and denied his request to proceed virtually. Defendant argues no authority precludes his virtual appearance and Rule 3:9-1 merely requires a defendant's "presence," without specifying his appearance must be in person.  Citing his right to waive his presence at trial, defendant asserts, by analogy, that right should include his decision to appear remotely in this case where his deportation prevents his in-person appearance.

Well-settled and evolving principles guide our review.  A trial court is vested with wide latitude in controlling all court proceedings.  See State v. Pinkston, 233 N.J. 495, 511 (2018); see also State v. Lansing, 479 N.J. Super. 565, 572 (App. Div. 2024).  Appellate courts "apply the abuse of discretion standard when examining the trial court's exercise of that control."  State v. Jones, 232 N.J. 308, 311 (2018).  "A court abuses its discretion when its 'decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'"  State v. Chavies, 247 N.J. 245, 257 (2021) (quoting State v. R.Y., 242 N.J. 48, 65 (2020)).

An accused's right to be present at trial "is among the most fundamental of constitutional rights."  State v. Grenci, 197 N.J. 604, 614 (2009).  That right

21

emanates from the constitutions of the United States and this state, both of which guarantee a criminal defendant's right to "be confronted with the witnesses against him," ibid. (quoting U.S. Const. amend. VI; N.J. Const. art. I, ¶ 10), and the right to due process of law, ibid. (citing U.S. Const. amend. XIV; N.J. Const. art. I, ¶ 1).  As noted, long-standing United States Supreme Court precedent has extended due process protections to noncitizens, without distinguishing between individuals who are present in this country legally or illegally.  See Wong Wing, 163 U.S. at 238; Doe, 457 U.S. at 212.

Pursuant to Rule 3:9-1(d), all disposition conferences, including a "Discretionary Case Disposition Conference . . . shall be held in open court with the defendant present."  Similarly, Rule 3:16(a), which pertains to pretrial hearings, provides "[t]he defendant must be present for every scheduled event unless excused by the court for good cause shown."  Further, paragraph (b) of Rule 3:16 governs trial and post-conviction proceedings and, with limited exceptions not relevant here, requires the defendant's "presen[ce] at every stage of the trial" unless the defendant "waiv[es] the right to be present at trial." Indeed, "[t]he right to be present at a criminal trial belongs to no one other than the defendant," who may waive the right "directly or impliedly."  State v.

Ingram, 196 N.J. 23, 45 (2008); see also R. 3:16(b).  Notably, Rule 3:9-1 neither defines "present" nor expressly prohibits a defendant's virtual appearance.

In the preamble to the Virtual Court Order, our Supreme Court established an "updated framework for court operations to allow more in-person proceedings" and superseded the Court's November 18, 2021 order, which addressed court operations during the COVID-19 pandemic.  The Court explained the superseding order was issued to establish "a more sustainable approach to court operations in order to optimize access, participation, and the timely administration of justice."  Ibid.

The motion court in the present matter emphasized the first paragraph of the Virtual Court Order, which provides, "[c]riminal jury trials shall continue to proceed in person."  The court rejected defendant's argument that the Virtual Court Order only requires the in-court presence of the jury and, as such, the court may permit defendant, his attorney, and a witness to appear virtually.  The court noted the absence of any "language that permits criminal jury trials to be conducted virtually provided only the jury is present in person."

However, paragraph 7 of the Virtual Court Order states, "[c]ourt events will be scheduled and conducted consistent with the principles of procedural fairness."  Paragraph 7(b) further provides, "[f]or all types of matters:  . . . [i]n

individual cases, all judges will continue to have discretion to grant an attorney or party's reasonable request to participate in person in a virtual proceeding <u>or to participate virtually in a matter being conducted in person</u>."  (Emphasis added).

Moreover, <u>Rule</u> 1:2-1(b) was promulgated the year preceding issuance of the <u>Virtual Court Order</u>.  Effective September 1, 2021, the rule provides, "[u]pon application in advance of appearance, unless otherwise provided by statute, the court may permit testimony in open court by contemporaneous transmission from a different location for good cause and with appropriate safeguards."  <u>R.</u> 1:2-1(b).  As the comments to <u>Rule</u> 1:2-1 make clear, "[e]xperience with the various video conferencing and live streaming applications employed during th[e COVID-19] emergency laid the groundwork for rule adoptions providing for the use of these technologies in appropriate circumstances."  Pressler & Verniero, <u>Current N.J. Court Rules</u>, cmt. 1 on <u>R.</u> 1:2-1 (2025).  The comments to paragraph (b) of <u>Rule</u> 1:2-1 further state, "[w]hat constitutes good cause" under <u>Rule</u> 1:2-1(b), "almost certainly will evolve with further experience with contemporaneous proceedings."  <u>Id.</u> cmt. 2.6.

As we recently held, the <u>Virtual Court Order</u> does not preclude a trial court from permitting a witness to testify remotely at an evidentiary hearing without

the State's consent.  <u>Lansing</u>, 479 N.J. Super. at 574.  In <u>Lansing</u>, we explained <u>Rule</u> 1:2-1(b) and the <u>Virtual Court Order</u> address the use of remote testimony in criminal proceedings.  <u>Id.</u> at 574-75.  We also stated the <u>Virtual Court Order</u> "recognizes that 'judges also routinely exercise discretion to permit individuals to participate virtually as necessary for health and other reasons.'"  <u>Id.</u> at 575 (quoting <u>Virtual Court Order</u> pmbl.).  We held a "trial court retains its authority to permit remote testimony by witnesses at those proceedings where 'good cause' is shown and 'appropriate safeguards' are imposed."  <u>Ibid.</u>; <u>see also</u> <u>Pathri v. Kakarlamath</u>, 462 N.J. Super. 208, 215-16 (App. Div. 2020) (establishing guidelines for deciding "good cause" and "appropriate safeguards" for allowing virtual testimony in a Family Part hearing).

With these principles in view, we first conclude the motion court incorrectly exercised its discretion by issuing a bench warrant for defendant's failure to appear in person at the September 5, 2023 conference.  Defendant not only appeared virtually at this conference, but also participated remotely at nearly all prior conferences.  Defendant's inability to attend court hearings in person in this matter was the direct result of his removal from the United States by immigration officials, not by his voluntary conduct.  <u>See</u> <u>Lopez-Carrera</u>, 245 N.J. at 617.  The motion court issued the September 5, 2023 bench warrant as a

"means" of detaining defendant should he reenter the United States. But the State has not since moved to extradite defendant in view of the degree of his pending charges. Under these circumstances, the bench warrant must be vacated.

We further conclude the motion court mistakenly exercised its discretion by denying defendant's request to participate virtually at trial under the confluence of circumstances presented here. Specifically, defendant's deportation status and the State's refusal to extradite him on these third- and fourth- degree charges prevent his lawful reentry into the United States and, as such, his in-person appearance at trial.

Accordingly, reading paragraphs 1 and 7 of the Virtual Court Order "in context . . . to give sense to the [order] as a whole," DiFiore v. Pezic, 254 N.J. 212, 228 (2023), and in view of the Court's express purpose of "optimiz[ing] access, participation, and the timely administration of justice," we hold defendant's appearance remotely via video link does not convert the trial into a virtual proceeding. Our review of the motion record reveals only defendant has requested to appear remotely at trial. All other participants, including the jury, will appear in person. Defendant's request was governed by paragraph 7(b) of the Virtual Court Order, which grants courts discretion to allow a "party's

reasonable request . . . to participate virtually in a matter being conducted in person." That request is not contravened by Rule 3:16, which does not expressly require defendant's in-person appearance at court proceedings.

Our holding is consonant with defendant's ability to waive his right to appear at trial pursuant to Rule 3:16(b). Stated another way, because defendant may waive his right to appear at trial, the court mistakenly exercised its discretion by not permitting his reasonable request to appear virtually at an otherwise in-person trial in view of his inability to legally reenter the United States and physically appear in court.

Lastly, we address the State's concern regarding the "brief" interpreter issues experienced during oral argument before the motion court. In State v. Juracan-Juracan, 255 N.J. 241, 250 (2023), our Supreme Court considered, as a matter of first impression, "whether [a] defendant was entitled to in-person as opposed to remote interpreting services." Noting "it remains crucial that the fundamental principles of fairness and a defendant's right to fully participate at trial are preserved," the Court set forth various factors for consideration by trial courts when determining whether to permit video remote interpreting services. Id. at 245-46. Relevant here, the Court stated, "guardrails should be put in place to ensure a fair trial for defendants, including built-in breaks for the interpreter

to rest and for the defendant to consult with counsel." Id. at 259. We are confident the court in this matter will follow the Court's guidance in Juracan-Juracan.

* * * *

In summary, we affirm the March 7, 2024 order denying defendant's motion to dismiss the indictment, and reverse and remand for the court to vacate the September 5, 2023 bench warrant. On remand, the court shall conduct a final pretrial conference, schedule a trial date, and permit defendant to appear remotely at all remaining proceedings. We conclude defendant's virtual appearance is a reasonable accommodation given the circumstances presented in this case. Defendant will thus be afforded an avenue to contest the present charges, which were the catalyst for his deportation. Defendant's virtual appearance protects his right to be present and participate at his trial – and it ensures the victim's rights "[t]o be treated with dignity and compassion by the criminal justice system," N.J.S.A. 52:4B-36(a), and "[t]o be present at any judicial proceeding involving a crime," N.J.S.A. 52:4B-36(p).

Further, we are confident the court can implement adequate precautions to minimize technological issues or irregularities during the hybrid proceeding. See State v. Vega-Larregui, 246 N.J. 94, 134-35 (2021) (holding a virtual grand

jury proceeding did not violate the fundamental fairness doctrine or defendant's constitutional rights, as the prosecutor and Judiciary staff took precautions to preserve the sanctity of these proceedings); see also Juracan-Juracan, 255 N.J. at 259.

Finally, although we recognize defendant's removal from the United States prohibits the court from enforcing a custodial or non-custodial sentence, those obstacles do not outweigh defendant's right to a speedy trial on the charges he has consistently contested. Also, it is not lost on us that the immigration judge considered those charges as "a significant negative equity in both [her] good moral character and discretionary determinations." Any future issues with sentencing, if defendant is convicted, neither preclude defendant's right to answer the charges filed against him nor the victim's rights under the Crime Victim's Bill of Rights.

Affirmed in part, reversed and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3169-23